105 So.2d 136

Bryant P. **LONG**

v.

**STATE.**

4 Div. 279.

Court of Appeals of Alabama.

Oct. 11, 1955.

Rehearing Denied Oct. 25, 1955.

Affirmed After Remandment Jan. 21, 1958.

Rehearing Denied Feb. 11, 1958.

John Patterson, Atty. Gen., Robt. Straub, Asst. Atty. Gen., Edmon L. Rinehart, Montgomery, of counsel, for the State.

McKee & Maye, Opelika, for appellant.

BONE, Judge.

Defendant was tried under an indictment charging that he had "within three years next preceding and on to-wit: November 17, 1953 actually engaged in or been connected with the setting up, conducting or operation of a lottery commonly known as a numbers (or number) game or policy game" in violation of Section 302(1), Title 14, Code 1940, as amended. Appellant demurred to the indictment, contending that certain aspects of the act are unconstitutional. These will be considered later. Appellant was convicted, and from this conviction he appeals.

The State's evidence showed that a Federal Wagering Tax Stamp had been issued to the defendant for the period beginning July 1, 1953 and expiring June 30, 1954. This stamp was authenticated by a certificate of the District Director of Internal Revenue Service, District of Alabama.

The evidence further showed that some slips not then identified had been found by members of the national guard on what was known as Wright Mill Road in Russell County, said slips having been found in an empty dwelling house.

It was then testified that defendant stated that he was the owner of lottery paraphernalia found by the national guard on Wright Mill Road and that he had been engaged in the operation of a lottery during a certain period of time, including that period covered by the indictment in this particular case.

It was shown by expert testimony that those slips found by the national guard were lottery slips, tickets or paraphernalia. It was also shown that the slips and tickets contained the date, 11–17–53.

There was no evidence on behalf of the defense.

Appellant attacks the constitutionality of Act No. 799, Acts 1951, p. 1398, which is as follows:

"An Act

"To make it unlawful for any person who is or has been actually engaged in or connected with the setting up, conducting or operation of any form or type of lottery commonly known as a numbers (or number) game or policy game, or who is or has been an employee of a person or persons who are or have been engaged in setting up, conducting, or operating any such game or games, to possess any slip, ticket, card, paper, writing, article, thing or other device or paraphernalia, which is customarily or usually used in the operation of any such game or games, and to provide minimum and maximum punishments upon first, second and subsequent convictions for violations thereof, and to fix rules of evidence in the courts in prosecutions for such violations.

"Be It Enacted by the Legislature of Alabama:

"Section 1. Any person who is or has been within three years next preceding actually engaged in or connected with the setting up, conducting or operation of any form or type of lottery commonly known as a numbers (or number) game or policy game, or who is or has been an employee of a person or persons who are or have been within three years next preceding engaged in setting up, conducting, or operating any such game or games and who possesses within the State of Alabama any slip, ticket, card, paper, writing, article, thing, or other device or paraphernalia, which is customarily or usually used in the operation of any such game or games, (herein called 'lottery paraphernalia') shall, on the first conviction, be punished by a fine of not less than $100.00 nor more than $500.00 and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than twelve months; and on the second or any subsequent conviction shall be fined not less than $100.00 nor more

than $1,000.00, and shall also be imprisoned in the county jail or sentenced to hard labor for the county, for not less than six months nor more than twelve months. To constitute the offense created by this section it shall not be necessary that such lottery paraphernalia be actually used, or actually be in use or is actually to be used in the operation of such games. It shall not be a defense to the charge of possessing such lottery paraphernalia that it has not actually been used or was not then being used, or was not intended to be used in the operation or in connection with the operation of any such game. Expert testimony shall be admissible to show that such lottery paraphernalia was customarily and usually used in the operation of such a numbers (or number) game or policy game, and expert testimony shall also be admissible to show the contrary.

"Section 2. The provisions of this Act shall not be construed to make unlawful the possession of articles or paraphernalia not commonly used in the conduct of any such numbers (or number) game or policy game.

"Section 3. If any section, clause, provision, or portion of this Act shall be held to be invalid by any court of competent jurisdiction, such holding shall not affect any other section, clause, provision, or portion of this Act which is not in and of itself unconstitutional."

We shall here first consider appellant's contention that the foregoing act violates section 45 of the Constitution of Alabama, 1901, in that its title contains more than one subject, and that it does not fairly set out the contents of the act.

■ It is first to be remembered that the power to legislate, within constitutional bounds, is vested solely in the legislature, and the courts are reluctant to exercise the power to strike down an act as unconstitutional, and will not do so unless so convinced beyond a reasonable doubt after indulging every presumption in favor of validity.

■ Where a statute is susceptible of two interpretations, one constitutional and the other unconstitutional, it is the duty of the courts to uphold its constitutionality rather than to nullify. Norton v. Lusk, 248 Ala. 110, 26 So.2d 849. This rule stands true even though the interpretation in favor of constitutionality be the less natural one. Jefferson County v. Busby, 226 Ala. 293, 148 So. 411; State v. Inman, 239 Ala. 348, 195 So. 448.

It is to be observed that the subject may be expressed in general terms, and, when so, everything subsumed under the general thought to make it a complete act, if cognate and germane thereto, is regarded as included in and authorized by it.

■ These are established rules of construction which should and must be followed, regardless of the purpose of the law involved, or whether it be wise or unwise legislation. The legislature is the arbiter of the merit and wisdom of laws, and courts must construe them so as to carry out the intent of the legislature, provided they can be so construed as to harmonize with the constitution. All doubt and intendment must be resolved in favor of their constitutionality. State ex rel. Collman v. Pitts, 160 Ala. 133, 49 So. 441, 686; Dearborn v. Johnson, 234 Ala. 84, 173 So. 864.

An examination of the title of the act now under consideration shows that the title sets forth in considerable detail its purpose and object as set out in the body. All of the listed provisions are reasonably connected with and germane to the central aim of making it unlawful for persons engaged in lotteries to possess lottery paraphernalia.

■ The question must always be whether, taking from the title the subject, we can find anything in the act which cannot be referred to that subject. If we do, the law embraces a subject not contained in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom

from all nice verbal criticism. Johnson v. Robinson, 238 Ala. 568, 192 So. 412; Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694.

Using the foregoing rules as a guide, we are of the opinion that striking down the statute now under consideration would not be justified. Clearly, the act contains only one subject, which is expressed in its title. The contents are substantially set out in the title, and therefore the arguments of appellant on this point are not well taken.

■ Appellant insists that the act contains a statute of limitations which is not contained in the title. We are of the opinion that it is cognate and germane to the main purpose of the act to place a reasonable restriction on the number of years prior to the indictment during which the accused may have engaged in a lottery. The law is established that when there is a fair expression of the general subject of the act in its title all matters reasonably related thereto, including all necessary agencies or instrumentalities which should facilitate execution of the act, are proper as being cognate and germane to the title. Kendrick v. Boyd, supra.

We cannot say that the limitation herein contained is incongruous or unconnected with the subject. This limitation is not such a departure from the general subject as to make the title misleading.

It is the contention of appellant that the title should show that there is a provision which extends the limitation in this type offense to three years instead of one year as is provided for bringing actions in misdemeanor cases. Without conceding merit to this contention, we will point out that there is no prejudice to this appellant because the offense for which he was convicted was within one year next preceding the indictment.

■ Appellant further contends that the act is unconstitutional for vagueness and that it violates Section 6 of the Constitution of Alabama, 1901. The specific defect complained of is the statute of limitations contained in the act which reads: "Any person who is or has been within three years next preceding * * *." The natural question is: Preceding what? The trial court in charging the jury interpreted this to mean three years next preceding the commencement of the prosecution. Appellant contends that this could only mean within three years next preceding the passage of the act. It is well settled, however, that the legislature is never presumed to have made a statute retroactive or retrospective in nature. McGregor v. McGregor, 249 Ala. 75, 29 So.2d 561; Alabama Power Co. v. Director of Industrial Relations, 36 Ala.App. 218, 54 So.2d 786; 18 Ala.Digest, Statutes, ☞263.

■ We do not have the authority to declare an act of the legislature unconstitutional. However, it is to be noted that the act carries a saving clause to the effect that if any portion of the act is unconstitutional the remaining parts are not thereby affected. Even if the questioned portion should be held invalid, the limitation of prosecution under the remaining valid portion would be governed by Section 222, Title 15, Code 1940, which reads as follows:

"The prosecution of all misdemeanors before the circuit, or county court, unless otherwise provided, must be commenced within twelve months next after the commission of the offense."

The evidence being undisputed that the offense for which the appellant was charged was committed within 12 months of the institution of the prosecution, the appellant could gain nothing even though his contention be accorded to.

■ Appellant contends further that Sections 302(8), (9), and (10) of Title 14, Code 1940, are violative of the due process and equal protection clauses of the 14th Amendment of the United States Constitution. These sections prescribe certain rules of evidence which shall be followed in prosecutions involving the gambling laws

of the State of Alabama. Among these rules it is provided that the possession, ownership, etc. of a Federal Wagering Tax Stamp shall be prima facie evidence against the holder, possessor, etc. in any prosecution of such person for violation of the gambling laws of the State of Alabama. It provides further that proof as therein provided shall be sufficient evidence, without explanation, to convict of violation of the gambling laws.

■ We have had occasion heretofore to pass upon the constitutionality of the sections now under consideration, and there upheld their constitutionality. Griggs v. State, 37 Ala.App. 605, 73 So.2d 382. In that opinion the act was set out in full, so we will not here set it out again. It will suffice to say at this point that we have in our previous opinion interpreted the validity of the statute as written. If the statute is too harsh, as appellant contends, then it is the duty of the legislature to change it and not that of the court.

See also, Fiorella v. City of Birmingham, 35 Ala.App. 384, 48 So.2d 761.

Appellant insists that the trial court erred in admitting his self-incriminatory statements, made to witnesses, prior to proof of the corpus delicti. It is to be observed that at the time these statements were admitted, the State's evidence consisted of Exhibit A, a duly authenticated United States Wagering Tax Stamp made out to the defendant, said stamp having been admitted pursuant to Sections 302 (8), (9), and (10), Title 14, Code 1940, as amended. Under these sections, the stamp constituted evidence, prima facie, that defendant had violated the gambling laws of the State of Alabama.

The State went further, however, and, after admitting the alleged confessions or statements against interest, put into evidence State's Exhibits C, C1, C2, C3, and C4, a group of slips which a duly qualified expert testified were paraphernalia commonly used in the numbers or policy game.

■ Without conceding merit to appellant's contention that the State had failed to make proof of the corpus delicti prior to the introduction of appellant's self-incriminating statements or confessions, we hold that any alleged error was cured by subsequent proof of the corpus delicti, which rendered the confession admissible. Carr v. State, 17 Ala.App. 539, 85 So. 852; Barger v. State, 34 Ala.App. 62, 37 So.2d 235.

Having considered thoroughly all the aspects of appellant's assignments of error and having considered all the alleged defects of the statute pointed out by appellant, we have come to the conclusion that the judgment of the lower court should be and the same is hereby affirmed.

Affirmed.

### After Remandment

CATES, Judge.

■ What was said heretofore as to Act No. 799, approved September 11, 1951, being free of vice under Section 45 of the Constitution is no longer appropriate. However, it is not needful to decide this case to certify that Act to the Supreme Court for a ruling, since by matching the indictment against the frame of Code 1940, T. 14, § 275, we consider the Code form of lottery indictment (T. 15, § 259, No. 71), and T. 14, § 275, substantially complied with under the indictment here.

The fact that the State did not go back more than one year in its evidence avoids any question of improperly admitted evidence under the three-year period of the 1951 Act.

When confronted with a quantity of seized lottery slips, the defendant admitted he had engaged in the lottery business from October, 1952, until June 18, 1954, except for a six-week period early in 1954.

■ One State witness, Alton L. Turner, testified to the circumstances of another

confession by Long and that one of the officers also present had (in Turner's presence) reduced it to writing, read it to Long (in Turner's presence), and that, while Long refused to sign it, he had (in Turner's presence) admitted it to be true. The defense objected to Turner's relating the substance of the statement, insisting the paper itself would be the best evidence. Whereupon, it was (over defendant's objection) received in evidence. This was not error, for, as said by Stakely, J., in Elkins v. State, 250 Ala. 672, 35 So.2d 693, 695:

"* * * Both the written statement and the oral testimony of a witness who heard the statement are classed as primary evidence. * * *"

We distinguish this situation from that in Gordon v. State, 34 Ala.App. 278, 41 So. 2d 608, affirmed 252 Ala. 492, 41 So.2d 610, where, when the defendant had signed a confession, the best evidence rule required its production. Here the original was produced and the identifying witness was available for cross-examination.

◼ Since the sentence was imposed under Act No. 799, it is necessary to remand the cause for correction of the sentence to conform with that provided under Code 1940, T. 14, § 275, and in connection therewith for the trial judge to hold a hearing as to whether or not this is Long's first, second, third or further conviction of the offense denounced.

Affirmed but remanded for proper sentence.

### Extension of Opinion After Remandment

On November 20, 1957, we withdrew the above and foregoing extension after remandment so that counsel for the defendant might make available the briefs submitted to the Supreme Court and any further written argument arising out of the senior tribunal's opinion to its judgment.

Meanwhile, Robertson v. State, ante, p. 312, 98 So.2d 620, has become final.

◼ Taking, as we must, the State's evidence with all the inferences which attend it by reason of the jury's verdict of conviction, we conclude that the State adduced sufficient evidence of the operation of a lottery to permit the introduction of Long's confession. The testimony concerning the slips and the expert witness' connecting them with a lottery were enough showing of "corpus delicti" to precede the defendant's confession which showed his criminal agency. In other words, a confession is not required to be corroborated. Williams v. State, 8 Ala.App. 394, 62 So. 371; Elliott v. State, Ala.App., 98 So.2d 618.[1] See also Malone v. State, 37 Ala.App. 432, 71 So.2d 99, 100, "* * * proof of the identity of the accused is not an essential part of the corpus delicti."

◼ The introduction in evidence of the certified copy of the defendant's Federal Wagering Tax Stamps for the period July 1, 1953–June 30, 1954, was without error, since it has evidentiary value bearing on a holding out of oneself, even though it is an excise tax receipt and not a license. It is not necessary to pass on the effect of § 3 of Act No. 741, approved September 17, 1953, since, in our opinion, the crime was proved independently of the production of Long's stamp. We construe the lottery here to be an activity for which the Internal Revenue Code requires the stamp. I.R.C., § 4421(1) (c) and (2); United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394. In Irvine v. California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, it was held (5 to 4) that there is no impediment in the Internal Revenue Code to the use of such stamps in evidence in State prosecutions. We cannot agree with Mr. Justice Black that this is in the nature of compelling a man to testify against himself: if that were so, fingerprints could not be testified to.

1. Ante, p. 314.

The only exception taken to the court's oral charge went to a statement as to the vague three-year period mentioned in Act No. 799, approved September 11, 1951, the court saying:

"  *   *   *  The indictment was filed the 30th of August, 1954. The three years relates to any time in that period prior to August 30, 1954.  *   *   *"

Since all the detailed evidence related to a drawing for November 17, 1953, this exception was as to an immaterial point.

No other points of the oral charge can be considered since no exception was taken at the opportunity given therefor before the jury retired. Scott v. State, 247 Ala. 62, 22 So.2d 529.

The only written charge refused the defendant was affirmative in nature. Its refusal was correct.

We find no error in the use of an expert witness. The various dodges by which games of chance can be euphemized and disguised are legion. Thus, in Chavannah v. State, 49 Ala. 396, we find the court referring to an opinion of a witness:

"  *   *   *  Such a performance, when a small sum of money is ventured for the chance of obtaining a greater sum, is the carrying on a lottery. And so one of the witnesses on the trial below called it. It may be somewhat nondescript, and may not yet have received a name by which it can be definitely registered in the catalogue of games; yet it has all the essentials of a lottery, and it is forbidden by our statute."

See also Fiorella v. City of Birmingham, supra, where two detectives testified that certain plastic pellets were of a type customarily used in the operation of a policy game.

We adhere to our opinion of November 19, 1957, reinstate it, and remand the cause to the trial court solely for the fixing of the proper sentence.

Remanded for proper sentence.

