199 So.2d 694

Thomas V. TAYLOR, Jr.

v.

STATE.

7 Div. 844.

Court of Appeals of Alabama.

May 16, 1967.

Thos. V. Taylor, Jr., pro se.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted February 9, 1967, without a brief [1] from appellant.

Taylor tried on a second degree murder indictment was convicted of voluntary manslaughter. The jury set his punishment at

---

1. Rule 12 of Appellate Practice provides in part: " * * * Upon written application, served upon opposing counsel, the court, or a justice thereof, for good cause shown, may extend the time for the filing of any of appellant's or appellee's briefs for not exceeding fifteen days."

ten years imprisonment. From judgment thereon, Taylor appeals.

## I.

▪ Driving east on U. S. Highway 278 on April 27, 1965, Taylor drove into a motor scooter. Two boys were killed.

Taylor's defense was that his act was an excusable homicide, i. e., by misadventure. Taylor testified:

"When I first saw it the motor scooter was coming out of the lower driveway * * * on my side of the highway and it hadn't even gotten straightened up before my car hit it."

Then stunned to an amnesic condition, he fled.

The tendencies of the State's evidence were adequate to support the verdict. There was some evidence that Taylor had driven after drinking.

## II.

▪ Taylor's conduct—even before his opportunity to discover the peril—could, from the viewpoint of verdict, be stamped as a prima facie case of appreciated disregard of the consequences. Culpability sufficient to show the mens rea for voluntary manslaughter can arise from the likelihood of another's being imperiled by the defendant's wanton conduct.

▪ Thus actual knowledge of danger to the deceased need not be proved to show consciousness that injury would probably ensue. Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Rainey v. State, 245 Ala. 458, 17 So.2d 687.

## III.

▪ For a defendant to say that amnesia reduced his will to a reflex and himself to an automaton is no complete defense to an otherwise criminal act.

▪ First, the existence of the amnesia or its nonexistence is a question of fact. The defendant's ipse dixit does not prevent the jury from disbelieving any or every word of his testimony. People v. Henry, 23 Cal.App.2d 155, 72 P.2d 915.

Second, Taylor's conduct before striking the scooter was pertinent as implying recklessness while conscious. Buchanan v. Vaughn, 260 Ala. 482, 71 So.2d 56.

Here amnesia, if believed, only was adduced to give an innocent explanation to Taylor's flight.

## IV.

▪ Certain confessory statements came in evidence. The trial judge correctly excluded the jury and expressly announced he was ruling the first statement as a matter of law to be voluntary. Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593.

The second statement was a question and answer transcript of interrogation by the District Attorney. Before the stenographer was put on the stand to prove the defendant's hearing the questions and giving the answers to them (see Tiner v. State, 271 Ala. 254, 122 So.2d 738), defense counsel withdrew their objection to the introduction. Only then did the judge allow the transcription to go to the jury.

As a trial tactic, this waiver was no doubt bottomed on certain exculpatory aspects of Taylor's admissions. We see no analogy to a major bypassing of a state court procedural step. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, Part V of the opinion.

▪ Moreover, the reporter was the official court reporter who transcribed the evidence on the instant trial. To the transcript embodying the in-custody questioning of Taylor by the District Attorney, the reporter affixed a certificate of its being correctly taken down and transcribed.

Though this is not a court of equity, we consider that this transcript might be proved under the formalities of the best evidence rule. State v. Cleveland, 6 N.J. 316, 78 A.2d 560, 23 A.L.R.2d 907.

Proof of Taylor's having acknowledged the transcript was supplied by defense counsel's waiver. Cf. Long v. State, 39 Ala.App. 372, 105 So.2d 136 (12).

### V.

■ This trial began November 4, 1965. Hence, we cannot, under Mathis v. State, 280 Ala. 16, 189 So.2d 564, apply Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

There was a conflict between Taylor's testimony and that of the officers as to whether Taylor asked to have a lawyer present. Taylor had been offered the chance to take the stand outside the presence of the jury on the occasion of the trial judge's enquiry as to the voluntariness of his confession. See Duncan v. State, 278 Ala. 145, 176 So.2d 840; Boulden v. State, 278 Ala. 437, 179 So.2d 20 (27).

Taylor's counsel rejected Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908, in toto. Hence, though he could not force the judge to keep the jury, yet at the same time the judge could not force the defendant to testify.

■ The prosecution, we consider, has an equal right to have the jury withdrawn when the foundation is sought to be laid for a confession. Basically therein the State, along with proving its prima facie case, has the threshold burden of showing as a *matter of law* that the confession is voluntary.

The trial judge expressly mentioned *Duncan*, supra. One of Taylor's attorneys was also counsel for Duncan.

. The occasion (on the admission of the question and answer confession) arose (R. 197–198) when the judge announced that he was "going to hear the testimony on this question outside the presence of the jury." Defense counsel objected and was overruled.

Defense counsel then stated, "We are not making any agreement that it can be done either way. [That is, with or without the jury.] We are objecting to both ways."

The court then stated:

"I understand, but I think that the Duncan case puts a responsibility on the Court on this thing but I believe that responsibility probably is—would come second to the desires of the Defendant himself in the case if he desired the testimony be heard by the Jury. I think that it certainly could be. * * *"

A somewhat similar colloquy had occurred when the State through Lt. Delevie elicited an oral statement of Taylor just before arrest that he (Taylor) had not hurt anybody. (R. 159.)

In *Duncan,* supra, we find:

"The writer and Justices Goodwyn and Merrill entertain the view that the federal courts may interpret the Jackson case as requiring that the issue of the voluntariness of the confession be determined outside the presence of the jury in all events, and for that reason would suggest to the trial courts that as a matter of precaution it might be best in the future to decide that issue in all instances outside the presence of the jury unless there has been an informed waiver. * * *"

■ Though this quoted matter was in the nature of obiter dicta, yet we perceive no error in the trial judge on his own motion excluding the jury before he rules on the voluntariness of a confession.

### VI.

Taylor as a witness in his own behalf testified in part:

"Q  Had you consulted an attorney before that or not?

"A  No, sir.

"Q  Had you made a request to have an attorney represent you or come there?

"A  I requested an attorney.

"Q  Who did you make that request of first, Mr. Witness?

"A  I made it to all of them that was standing there.  I didn't make it to no precise man.

"Q  Where did you make it?

"A  In their office.

"Q  In this same office?

"A  Yes, sir.

"Q  Where this statement was taken by the Reporter?

"A  Yes, sir.

"Q  And exactly what did you say in making that request?

"A  I asked them about an attorney and they asked me who my attorney was. And I told them I didn't have an attorney, that I would like to think it over and figure out who I wanted to be my attorney.  And they said I could do that later on."

■  The State did not offer any proof to contradict this evidence.  Since it was elicited after the judge had passed on the legal voluntariness of the confession, its value was for the jury in weighing the confession.  Such weight no doubt gives the jury an opportunity to reject a confession. See Lockett v. State, 218 Ala. 40, 117 So. 457.

■  We, however, cannot under the totality of circumstances doctrine extant before Miranda v. State of Arizona, supra, reverse merely because the defendant alone has told the jury that he asked for a lawyer.

Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is applied narrowly by our Supreme Court. Mathis v. State, 280 Ala. 16, 189 So.2d 564; Sanders v. State, 278 Ala. 453, 179 So.2d 35.  Even though we were to take Taylor's testimony above quoted at face value, nevertheless it also appears that Taylor was expressly advised on the question and answer interrogation that he did not have to make any statement.

■  As we view this view of *Escobedo* in the narrow pre-Miranda sense, to find that due process has been denied there must be both (1) a denial of counsel *on request,* and (2) a failure to warn of the "absolute constitutional right to remain silent."  In other words, before *Miranda* the caution of the privilege (or right) to be silent sufficed to make up for the lack of a lawyer.  See Philpot v. State, 280 Ala. 98, 190 So.2d 291.

We quote from Boutwell v. State, 279 Ala. 176, 183 So.2d 774:

"* * * During this hearing and on the main trial it is quite apparent that defendant on more than one occasion prior to the confessionary statements asked for the services of an attorney.  At no time was he denied such services, but no attorney was ever furnished him.  * * *."

See also Browne v. State, 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W.2d 169.

Alternatively the verdict can be viewed as disregarding the defendant's claim that he wanted a lawyer.  See Lokos v. State, 278 Ala. 586, 179 So.2d 714.

VII.

Under Code 1940, T. 15, § 389, we have carefully reviewed each ruling of the trial judge and fail to find error therein, and consider the judgment below is due to be

Affirmed.