168 So.2d 35

**Flora SMITH**

v.

**CITY OF BIRMINGHAM.**

**6 Div. 997.**

Court of Appeals of Alabama.

Oct. 6, 1964.

Arthur Shores and Orzell Billingsley, Jr., Birmingham, Jack Greenberg, Norman C. Amaker, New York City, and J. LeVonne Chambers, Charlotte, N. C., for appellant.

Wm. C. Walker, Birmingham, for appellee.

CATES, Judge.

This is an appeal from a conviction before a jury of breach of a city ordinance making it "unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on." Birmingham Code 1944, § 1142, as amended. Phifer v. City of Birmingham, 42 Ala.App. 282, 160 So.2d 898, and Shuttlesworth v. City of Birmingham, 42 Ala.App. 296, 161 So.2d 796, show the ordinance is prima facie good.[1]

---

1. In Shelton v. City of Birmingham, ante p. 371, 165 So.2d 912, the majority opinion cites People v. Galpern, 259 N.Y. 279, 181 N.E. 572, 83 A.L.R. 785, for the proposition that the pedestrian must prove that the policeman's order to "move on" is purely arbitrary and not promotive of public order.

In Tinsley v. City of Richmond, 202 Va. 707, 119 S.E.2d 488, the principle that the patrolman is prima facie right is upheld because the city charter empowered the council to ordain for the "[prevention] of conduct in the streets dangerous to the public." The ordinance was: "Any person loitering or standing on the street, sidewalk or curb, shall move on or separate when required to do so by any member of the Police Bureau * * *." The Virginia Supreme Court of Appeals harkening back to Benson v. Norfolk, 163 Va. 1037, 177 S.E. 222, considered the exigencies of the public welfare demanded that discretion be left to police officers.

People v. Carcel, 3 N.Y.2d 327, 165 N. Y.S.2d 113, 144 N.E.2d 81, clearly shows that Galpern means that the policeman's order to move on is to be obeyed *only* when the defendant "congregates with others" on a street. Adopting People v. LoVecchio, 185 Misc. 197, 56 N.Y.S.2d 354, on this point, the Court of Appeals defined "congregating" as requiring the herding together of at least three persons at a given time and place.

State v. Sugarman, 126 Minn. 477, 148 N.W. 466, is an oft-cited case involving an ordinance against obstruction of free passage of the streets.

Although some attempt is made to treat disobedience of an order to move on as disorderly conduct distinct from the regulation of traffic (Anno. 65 A.L.R.2d 1152), yet it must be recognized that the ultimate need of the charter power and by-laws under it is presented by emergencies. Traffic, vehicular and pedestrian, ordinarily is self-regulating. Indeed, the cynic would say traffic gets snarled when the patrolman takes over. Be that as it may, the use of the streets by emergency vehicles and for mass movements, such as processions, parades, or even mobs, requires (if not demands) regulation. The Birmingham Ordinance, § 1142, as amended, unlike the Richmond one, is clearly directed at loitering so "as to obstruct free passage over, on or along [any] street or sidewalk." The City of Birmingham conformed to this view when it drew up the complaint.

We quote from appellant's brief:

"On appeal to the Circuit Court * * * the [City Prosecutor] filed a complaint alleging that:

"* * * Flora Smith * * * did stand or loiter upon a street or sidewalk or some part thereof in the City of Birmingham and did so stand or loiter or lay so as to obstruct free passage thereon and after having been requested by Police Officer, B. K. Epperson, to move on * * * contrary to and in violation of Section 1142 of the General City Code of Birmingham of 1944, as amended by Ordinance No. 1436–F.

* * * * * *

"Appellant was found guilty and her punishment fixed at a fine of $50.00 plus costs * * *

"Appellant filed a motion for a new trial * * * which was overruled * * *

"The following is a brief summary of the testimony of each witness:

"*Officer B. K. Epperson.* Standing in front of the City Hall on the 19th Street side, he observed appellant and another lady lying on steps leading to City Hall. Appellant was mumbling something which he could not understand and blocking one flight of the stairway. He twice ordered appellant to move and upon her failuure placed her under arrest. * * *

"*Officer W. C. Walker* * * * assisted Officer Epperson in arresting appellant. He observed appellant on her knees on one flight of steps leading to the City Hall. She was not saying anything. He ordered her to leave and upon her failure to do so, he assisted Officer Epperson in arresting appellant. * * * One other person was with appellant on the same flight of steps.

"*Appellant Flora Smith* * * * offered a prayer on the steps of the City Hall to protest the treatment given her people by the City. She did not block the whole steps. She was told to leave and arrested after failing to do so."

The City requested that the following addition be made to the appellant's statement of facts:

"The defendant and another female were stretched out on the north steps of the City Hall Building. The defendant was stretched out on her stomach about the middle of the first flight. People could not use these steps to get from City Hall to the sidewalk or from the sidewalk to City Hall. The people on the landing of the steps could not get around the defendant and her companion. The defendant was requested to move several times by a police officer."

### I.

### *Motion to Exclude*

The City contends:

"* * * that the granting or denying of a motion to exclude the evidence is discretionary with the trial judge and no error can be predicated on such ruling.

"In a criminal case the proper method of testing the legal sufficiency of the evidence is by motion to exclude. Satterfield v. State, 134 So. [30] 90, 24 Ala.App. 251 [257]; Wallace v. State, 75 So. 633, 16 Ala.App. 85.

"The rule in respect to civil cases is different. In Dudley Brothers v. Long, 109 So.2d 684, 268 Ala. 565, we find the rule stated:

"'The rule in respect to a motion by the defendant to exclude all of the plaintiff's evidence in a civil case is that the trial court will not be put in error for refusing the motion, nor will it be put in error for granting it if the evidence does not make out a prima facie case.'

"Appellant's proper method of testing the legal sufficiency of the evidence in a civil case is by request for the affirmative charge. Mazer v. Brown, 66 So. 2d 561, 259 Ala. 449."

■ Logically and historically, the office of the motion to exclude in a trial of a breach of a city ordinance belongs under the same rule as prevails in trials of indictable offenses. This we conclude because the statute (Code 1940, T. 15, § 389) dispensing with assignments of error in criminal appeals is the sole difference. Yet the burden of proof is the same in both misdemeanor and ordinance trials. The rules of evidence are the same. The defendant can suffer virtually the same incarceration and pay similar fines. To make a nonstatutory distinction would be further to confuse.

## II.

### Was the Appellant on a Sidewalk?

■ A "street" is, unless otherwise qualified, a public way or road, usually urban, and embraces the surface from side to side and end to end. Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712; First National Bank v. Tyson, 144 Ala. 457, 39 So. 560.

■ "In common parlance a sidewalk is the part of a street assigned to the use of pedestrians." City of Birmingham v. Shirley, 209 Ala. 305, 96 So. 214. See also Code 1940, T. 36, § 1(41), as amended.

In Costello v. State, 108 Ala. 45, 18 So. 820, convictions for the common law offense of setting up purprestures—i. e., fruit stands and candy stalls—on public sidewalks were upheld. The ordinance here brought in question, however, purports to forbid persons from blocking free passage by the manner in which they walk or stand on the thoroughfares in the city.

2. Birmingham General City Code, 1944, § 2, Definitions, provides:
"In the construction of this code and of all ordinances, the following definitions and rules shall be observed, un-

■ The steps of the City Hall are not within the scope of the ordinance cited.

In Haney v. Town of Rainelle, 125 W.Va. 397, 25 S.E.2d 207, we find:

"We are clearly of opinion that this walkway and approaches to the jail entrance did not constitute a 'street or sidewalk or alley' within the meaning of the statute mentioned. It was not a street; it was not an alley; and it was not a sidewalk. It was, in fact, a mere walkway from a public highway to the municipal building, and was constructed and maintained solely as a means of access thereto by persons having the right to resort to that building for the purposes for which it was constructed and maintained. The way was not for general travel by all people, to all places, for all purposes, but was for ingress and egress, to and from, a particular place for special and limited purposes. It was of precisely the same character as a walkway leading onto and across a lot owned by a town to a public building thereon. Such a walkway would be, and the one here involved was, simply an appurtenance to the building itself, and partakes of the legal character of the building to which it leads, and which is its excuse for existence, and not of the character of the street from which it extends.
* * *"

■ We cannot square the meaning of the word "sidewalk" in the ordinance with the fundamental rule that penal enactments are to be strictly construed in favor of the liberty of the citizen. The steps of the City Hall not being shown by the City's evidence to be within the bounds of a street cannot— unaided by other clarifying or defining words—be deemed a "sidewalk" within the scope of this ordinance as presently written.[2]

less the context clearly requires otherwise: * * * *Sidewalk.* The term 'sidewalk' shall mean that portion of a street between the curb line and adjacent property line."

### III.

Although there is scant evidence to support an inference of the appellant's obstructing the free passage (McKelvy v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301) of any other persons, we forego this aspect of the case.[3]

The judgment below is due to be reversed and the cause remanded for proceedings consistent herewith.

Reversed and remanded.

3. Using public property for prayer was not brought up in the lower court. In view of recent decisions by the Supreme Court of the United States, we are not prepared to extend the reasoning of the Supreme Court of Florida as to the harmlessness of using public waters to baptise as discussed in Koerner v. Borck, Fla., 100 So.2d 398. That holding could well rest on the waters not being otherwise denied to or appropriated from others than the postulants for immersion.