## SHUTTLESWORTH $v.$ CITY OF BIRMINGHAM.

No. 5.  Argued October 11, 1965.—Decided November 15, 1965.

*James M. Nabrit III* argued the cause for petitioner. With him on the brief were *Jack Greenberg, Norman C. Amaker, Peter A. Hall, Orzell Billingsley, Jr.,* and *Anthony G. Amsterdam.*

*Earl McBee* argued the cause and filed a brief for respondent.

Mr. Justice Stewart delivered the opinion of the Court.

The petitioner was brought to trial in the Circuit Court of Jefferson County, Alabama, upon a complaint charging him with violating two sections of the General Code of the City of Birmingham, Alabama.[1] After trial without a jury, the court found him "guilty as charged in the Complaint," and imposed a sentence of imprisonment for 180 days at hard labor and an additional 61 days at hard labor in default of a $100 fine and costs. The judgment of conviction was affirmed by the Alabama Court of Appeals, 42 Ala. App. 296, 161 So. 2d 796, and the Supreme Court of Alabama declined review. 276 Ala. 707, 161 So. 2d 799. We granted certiorari to consider the petitioner's claim that under the Fourteenth Amendment of the United States Constitution his conviction cannot stand. 380 U. S. 905.

The two ordinances which Shuttlesworth was charged with violating are §§ 1142 and 1231 of the Birmingham General City Code. The relevant paragraph of § 1142 provides: "It shall be unlawful for any person or any number of persons to so stand, loiter or walk upon any street or sidewalk in the city as to obstruct free passage over, on or along said street or sidewalk. It shall also be unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on." Section 1231 provides: "It shall be unlawful for any person to refuse or fail to comply with any lawful order, signal or direction of a police officer." The two counts in the complaint were framed in the words of these ordinances.[2]

---

[1] This was a trial *de novo* on appeal from a judgment of conviction in the Recorder's Court of the City of Birmingham.

[2]                    "Count One

"Comes the City of Birmingham, Alabama, a municipal corporation, and complains that F. L. Shuttlesworth, within twelve months

The evidence was in conflict, but the prosecution's version of the facts can be briefly summarized. On April 4, 1962, at about 10:30 a. m., Patrolman Byars of the Birmingham Police Department observed Shuttlesworth standing on a sidewalk with 10 or 12 companions outside a department store near the intersection of 2d Ave. and 19th St. in the City of Birmingham. After observing the group for a minute or so, Byars walked up and "told them they would have to move on and clear the sidewalk and not obstruct it for the pedestrians." After some, but not all, of the group began to disperse, Byars repeated this request twice. In response to the second request, Shuttlesworth said, "You mean to say we can't stand here on the sidewalk?" After the third request he replied, "Do you mean to tell me we can't stand here in front of this store?" By this time everybody in the group but Shuttlesworth had begun to walk away, and Patrolman Byars told him he was under arrest. Shuttlesworth then responded, "Well, I will go into the store,"

---

before the beginning of this prosecution and within the City of Birmingham, or the police jurisdiction thereof, did stand, loiter or walk upon a street or sidewalk within and among a group of other persons so as to obstruct free passage over, on or along said street or sidewalk at, to-wit: 2nd Avenue, North, at 19th Street or did while in said group stand or loiter upon said street or sidewalk after having been requested by a police officer to move on, contrary to and in violation of Section 1142 of the General City Code of Birmingham of 1944, as amended by Ordinance Number 1436–F.

"Count Two

"Comes the City of Birmingham, Alabama, a municipal corporation, and complains that F. L. Shuttlesworth, within twelve months before the beginning of this prosecution and within the City of Birmingham, or the police jurisdiction thereof, did refuse to comply with a lawful order, signal or direction of a police officer, contrary to and in violation of Section 1231 of the General City Code of the City of Birmingham."

and walked into the entrance of the adjacent department store. Byars followed and took him into custody just inside the store's entrance.[3]

## I.

On its face, the here relevant paragraph of § 1142 sets out two separate and disjunctive offenses. The paragraph makes it an offense to "so stand, loiter or walk upon any street or sidewalk . . . as to obstruct free passage over, on or along said street or sidewalk." The paragraph makes it *"also . . .* unlawful for any person to stand or loiter upon any street or sidewalk . . . after having been requested by any police officer to move on." (Emphasis added.) The first count of the complaint in this case, tracking the ordinance, charged these two separate offenses in the alternative.[4]

Literally read, therefore, the second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration.[5] It "does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat." *Cox* v. *Louisiana,* 379 U. S. 536, 579 (separate opinion of MR. JUSTICE BLACK). Instinct with

---

[3] The record contains many references to a so-called "selective buying campaign" in which Birmingham Negroes were engaged at that time. There was no showing, however, of any connection between this campaign and the presence of the petitioner and his companions outside the department store on the morning of his arrest.

[4] See note 2, *supra.*

[5] *Thornhill* v. *Alabama,* 310 U. S. 88, 97; *NAACP* v. *Button,* 371 U. S. 415, 433, 435; Amsterdam, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75–81, 96–104 (1960). Cf. *Smith* v. *California,* 361 U. S. 147, 151; *Baggett* v. *Bullitt,* 377 U. S. 360, 371.

its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state.[6]

The matter is not one which need be exhaustively pursued, however, because, as the respondent correctly points out, the Alabama Court of Appeals has not read § 1142 literally, but has given to it an explicitly narrowed construction. The ordinance, that court has ruled, "is directed at obstructing the free passage over, on or along a street or sidewalk by the manner in which a person accused stands, loiters or walks thereupon. Our decisions make it clear that the mere refusal to move on after a police officer's requesting that a person standing or loitering should do so is not enough to support the offense. . . . [T]here must also be a showing of the accused's blocking free passage . . . ." *Middlebrooks* v. *City of Birmingham,* 42 Ala. App. 525, 527, 170 So. 2d 424, 426.

The Alabama Court of Appeals has thus authoritatively ruled that § 1142 applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on. It is our duty, of course, to accept this state judicial construction of the ordinance. *Winters* v. *New York,* 333 U. S. 507; *United States* v. *Burnison,* 339 U. S. 87; *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs,* 332 U. S. 495. As so construed, we cannot say that the ordinance is unconstitutional, though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied.

The present limiting construction of § 1142 was not given to the ordinance by the Alabama Court of Appeals,

---

[6] *Lovell* v. *City of Griffin,* 303 U. S. 444, 451; *Kunz* v. *New York,* 340 U. S. 290, 293; *Schneider* v. *State,* 308 U. S. 147, 163–164.

however, until its decision in *Middlebrooks, supra,* two years after the petitioner's conviction in the present case.[7] In *Middlebrooks* the Court of Appeals stated that it had applied its narrowed construction of the ordinance in affirming Shuttlesworth's conviction, but its opinion in the present case, 42 Ala. App. 296, 161 So. 2d 796, nowhere makes explicit any such construction. In any event, the trial court in the present case was without guidance from any state appellate court as to the meaning of the ordinance.

The trial court made no findings of fact and rendered no opinion. For all that appears, that court may have found the petitioner guilty only by applying the literal— and unconstitutional—terms of the ordinance. Upon the evidence before him, the trial judge as finder of the facts might easily have determined that the petitioner had created an obstruction, but had subsequently moved on. The court might alternatively have found that the petitioner himself had created no obstruction, but had simply disobeyed Patrolman Byars' instruction to move on. In either circumstance the literal terms of the ordinance would apply; in neither circumstance would the ordinance be applicable as now construed by the Alabama Court of Appeals. Because we are unable to say that the Alabama courts in this case did not judge the petitioner by an unconstitutional construction of the ordinance, the petitioner's conviction under § 1142 cannot stand.

---

[7] The petitioner's trial took place in October 1962. The Alabama Court of Appeals affirmed the judgment of conviction in November 1963. The *Middlebrooks* case was decided in October 1964. 42 Ala. App. 525, 170 So. 2d 424. The *Middlebrooks* construction of the ordinance was adumbrated in *Smith* v. *City of Birmingham,* decided the same day. 42 Ala. App. 467, 168 So. 2d 35.

## II.

We find the petitioner's conviction under the second count of the complaint, for violation of § 1231 of the General City Code, to be constitutionally invalid for a completely distinct reason. That ordinance makes it a criminal offense for any person "to refuse or fail to comply with any lawful order, signal or direction of a police officer." Like the provisions of § 1142 discussed above, the literal terms of this ordinance are so broad as to evoke constitutional doubts of the utmost gravity. But the Alabama Court of Appeals has confined this ordinance to a relatively narrow scope. In reversing the conviction of the petitioner's codefendant, the court said of § 1231: "This section appears in the chapter regulating vehicular traffic, and provides for the enforcement of the orders of the officers of the police department in directing such traffic." *Phifer* v. *City of Birmingham,* 42 Ala. App. 282, 285, 160 So. 2d 898, 901.[8]

The record contains no evidence whatever that Patrolman Byars was directing vehicular traffic at the time he told the petitioner and his companions to move on. Whatever Patrolman Byars' other generally assigned duties may have been,[9] he testified unambiguously that

---

[8] Cf. *Shelton* v. *City of Birmingham,* 42 Ala. App. 371, 165 So. 2d 912, affirming the conviction of a defendant who refused to obey an officer's direction to get out of the middle of a street which had been closed to private vehicles and in which "[p]olice cars and fire engines were being used to move and quiet the crowd."

[9] Patrolman Byars testified that on the morning in question he was a "utility officer," and that as such he was "in charge of the direction and movement of all traffic at 3rd Avenue and 19th Street and four blocks in an east, west, north and south direction." He conceded that he was "not regularly placed" at the intersection where the arrest occurred, and that he had "nothing to do with the other officers who were also there."

he directed the petitioner's group to move on, to "clear the sidewalk and not obstruct it for the pedestrians." [10]

Five years ago this Court decided the case of *Thompson* v. *City of Louisville*, 362 U. S. 199. There we reversed the conviction of a man who had been found guilty in the police court of Louisville, Kentucky, of loitering and disorderly conduct. The proposition for which that case stands is simple and clear. It has nothing to do with concepts relating to the weight or sufficiency of the evidence in any particular case. It goes, rather, to the most basic concepts of due process of law. Its application in Thompson's case turned, as MR. JUS-

---

[10] The record shows that the officer directing vehicular traffic at the intersection of 2d Ave. and 19th St. at the time of the petitioner's arrest was Officer Hallman. His relevant testimony was as follows:

"Q. Now, you observe on these corners from your position here when you police that corner, do you not?

"A. I try to.

"Q. Had you seen these people over there blocking traffic before you saw Officer Byars?

"A. I saw him standing over there talking to them.

"Q. Did you see them before he was talking to them?

"A. I saw them over there. I didn't pay any particular attention to them.

"Q. Did you get the impression they were waiting for the light to change?

"A. I couldn't answer that because I don't know what they had on their mind.

"Q. You formed no impression when you first saw them?

"A. No.

"Q. You took no note of them when you first saw them, is that right?

"A. Just saw them standing over there.

"Q. The only time you made note of them standing over there was when you saw the policeman assisting you talking to them?

"A. When I saw him over there talking to them. He wasn't assisting me.

"Q. He wasn't assisting you with your corner.

"A. No."

TICE BLACK pointed out, "not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all." 362 U. S., at 199. The Court found there was "no evidence whatever in the record to support these convictions," and held that it was "a violation of due process to convict and punish a man without evidence of his guilt." 362 U. S., at 206. See also *Garner* v. *Louisiana,* 368 U. S. 157.

No more need be said in this case with respect to the petitioner's conviction for violating § 1231 of the General Code of the City of Birmingham, Alabama. Quite simply, the petitioner was not in, on, or around any vehicle at the time he was directed to move on or at the time he was arrested. He was a pedestrian. Officer Byars did not issue any direction to the petitioner in the course of directing vehicular traffic, because Officer Byars was not then directing any such traffic. There was thus no evidence whatever in the record to support the petitioner's conviction under this ordinance as it has been authoritatively construed by the Alabama Court of Appeals. It was a violation of due process to convict and punish him without evidence of his guilt.

For these reasons the judgment is reversed and the case is remanded to the Court of Appeals of Alabama for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS, concurring.

I join Part II of the Court's opinion but would reverse on Count I for a somewhat different reason. The police power of a municipality is certainly ample to deal with all traffic conditions on the streets—pedestrian as well as vehicular. So there could be no doubt that if petitioner were one member of a group obstructing a sidewalk he could, pursuant to a narrowly drawn ordinance, be asked to move on and, if he refused, be arrested for the obstruc-

tion. But in this case the testimony is that the group dissolved when warned by the police, save only the petitioner.* At the time of the arrest petitioner was no longer blocking traffic. Section 1142 of the Birmingham General Code makes it unlawful to "obstruct the free passage of persons on . . . sidewalks." The ordinance, as it has been construed by the Alabama Court of Appeals, has been held to apply only to one who continues to block a sidewalk *after a police warning to move.* *Middlebrooks* v. *City of Birmingham*, 42 Ala. App. 525, 527, 170 So. 2d 424, 426. There was no such "obstructing" here, unless petitioner's presence on the street was itself enough. Failure to obey such an order, when one is not acting unlawfully, certainly cannot be made a crime in a country where freedom of locomotion (*Edwards* v. *California*, 314 U. S. 160) is honored. For these reasons I think there was no evidence, within the meaning of *Thompson* v. *City of Louisville*, 362 U. S. 199, to sustain the conviction and hence I would reverse the judgment outright.

### APPENDIX TO OPINION OF MR. JUSTICE DOUGLAS.

Officer Robert L. Byars, who made the arrest, testified on cross-examination as follows:

"Q. How many persons were standing there at that intersection when you first observed it?

"A. Some ten or twelve.

"Q. Were they all colored or white people, or altogether or what?

"A. I didn't pay particular notice to the race.

"Q. You stood there a minute or minute and a half and then you went out and cleared the intersection?

"A. I went out and asked them to move.

---

*See Appendix hereto.

"Q. Was that great big crowd out there and the intersection completely blocked? You testified you had half of the south-north cross walk free, that the defendants were not blocking half of the south-north cross walk, they were standing in the west part of the cross walk where they should be standing assuming they were going south, they were not blocking the east-west cross walk at all? Now, where was the crowd that was blocking?

"A. They were all standing on the sidewalk.

"Q. You mean the crowd?

"A. That's right, including the defendant.

"Q. Now, you placed the defendants where you have the X. Now, the crowd is what we are interested in now, the crowd they were blocking, where were they?

"Mr. Walker: We object. There has been no testimony that there was a crowd that was being blocked; the testimony is there was a crowd blocking the moving traffic.

"Q. Are these defendants charged then with assembling the crowd or something? Who were they blocking? Where were the persons they were blocking, these two defendants here?

"A. They were blocking half of the sidewalk causing the people walking east to go into the street around them.

"Q. The people walking east along what street?

"A. Along 2nd Avenue.

"Q. Along this way (indicating)?

"A. That's right.

"Q. The people walking along 2nd Avenue from west to east had to go around them?

"A. That is true.

"Q. While they stood there?

"A. That is true.

"Q. And you observed that for a minute or minute and a half?

"A. That is true.

"Q. And then you went out and you required them to move on. Did you speak directly to the Defendant Shuttlesworth?

"A. I spoke to the people standing assembled there.

"Q. They all moved but him, is that correct?

"A. Not on the first request they didn't all move. Some began to move.

"Q. Well, all had moved by the time you made the arrest?

"A. Except Shuttlesworth.

"Q. Nobody was standing there but Shuttlesworth?

"A. Nobody was standing; everybody else was in motion except the Defendant Shuttlesworth, who had never moved.

"Q. Was he talking to you during this time?

"A. He made a statement to me on two occasions when I informed him to move on on three occasions.

"Q. Did he ask you where you wanted him to move?

"A. No.

"Q. Did you tell him where to move?

"A. I did not.

"Q. You didn't arrest anybody but Shuttlesworth?

"A. Not at that time." (R. 27–28.)

Officer C. W. Hallman, who observed the above after having been called over by Officer Byars, testified on direct examination as follows:

"Q. About how many was in the group at that time, if you know?

"A. I would say five or six. It could have been more or less.

"Q. What happened to the group then, if anything?

"A. All of them dispersed except Shuttlesworth.

"Q. What happened after that?

"A. Officer Byars told him he was under arrest for blocking the sidewalk and placed him under arrest." (R. 59–60.)

MR. JUSTICE BRENNAN, concurring.

I join the Court's opinion on my understanding that *Middlebrooks* v. *City of Birmingham* is being read as holding that § 1142 applies only when a person (a) stands, loiters or walks on a street or sidewalk so as to obstruct free passage, (b) is requested by an officer to move on, and (c) thereafter continues to block passage by loitering or standing on the street. It is only this limiting construction which saves the statute from the constitutional challenge that it is overly broad. Moreover, because this construction delimits the statute to "the sort of 'hard-core' conduct that would obviously be prohibited under any construction," *Dombrowski* v. *Pfister,* 380 U. S. 479, 491–492, it may be legitimately applied to such conduct occurring before that construction.

MR. JUSTICE FORTAS, with whom THE CHIEF JUSTICE joins, concurring.

I agree that Shuttlesworth's conviction must be set aside. But I am concerned lest the opinion of the Court be considered as indicating that Shuttlesworth can constitutionally be convicted of violating the General Code of the City of Birmingham, Alabama, on the facts here presented. Any such conviction would violate basic constitutional guaranties. I would make this clear now.

The Court's opinion does not challenge the constitutionality of § 1142 of the Birmingham Code as that section was construed by the Alabama Court of Appeals two years after Shuttlesworth's conviction. The opinion may be read to imply that if Shuttlesworth is now put to trial for violation of § 1142, as construed, the vice of the present conviction may be eliminated. I would make it clear that the Federal Constitution forbids a conviction on the facts of this record, regardless of the validity of the ordinance involved.

I agree that, as construed by Alabama two years after Shuttlesworth was convicted, § 1142 cannot be held unconstitutional on its face. I agree that if there were a rational basis for charging Shuttlesworth with violating the section as so construed, he could be retried if Alabama should choose so vigorously to protect the sidewalks of Birmingham. Civil rights leaders, like all other persons, are subject to the law and must comply with it. Their calling carries no immunity. Their cause confers no privilege to break or disregard the law.

But there is here no possible basis for a conviction which would be valid under the Federal Constitution. The accused provision would be unconstitutional as applied to Shuttlesworth's facts even after the plastic surgery by Alabama's Court of Appeals in 1964. *Middlebrooks* v. *City of Birmingham,* 42 Ala. App. 525, 170 So. 2d 424.[1] A revision of the formula does not and cannot change the facts; and those facts do not permit the State to jail Shuttlesworth for his actions on April 4, 1962.

Taking the prosecution's version of the facts, it appears that Shuttlesworth was one of a group of 8, 10 or 12 [2] persons who at 10:30 a. m. on April 4, 1962, were accosted by a patrolman after they had stood for a minute or a minute and a half at 19th Street and 2d Avenue in Birmingham. They occupied one-half of the sidewalk. They were conversing among themselves. There is no suggestion of disorder or of deliberate obstruction of pedestrian traffic. After the first command by the pa-

---

[1] As the Court's opinion herein points out, in *Middlebrooks,* the Court of Appeals stated that its narrowed construction of the ordinance had been the "ratio decidendi" of *Shuttlesworth,* decided a year earlier. But there is no indication of this in *Shuttlesworth* itself.

[2] Officer Renshaw testified there were 8, 10 or 12 people in the group (R. 40). Officer Byars testified to 10 or 12 (R. 17).

trolman, the group commenced to move away. The offi-
cer repeated his command, and Shuttlesworth said, "You
mean to say we can't stand here on the sidewalk?" After
the third command, Shuttlesworth said, "Do you mean
to tell me we can't stand here in front of this store?"
The officer then told Shuttlesworth he was under arrest.
Shuttlesworth said he would go into the store. The
officer followed and arrested him. There was no resist-
ance. By this time everybody in the group except Shut-
tlesworth had moved away. The entire incident took
less than four and one-half minutes, from arrival of
Shuttlesworth and his friends at the corner to his arrest.

For this, Shuttlesworth was tried, convicted and sen-
tenced to spend half a year at hard labor and to pay a
fine of $100.

In my view, there is nothing in the facts which justified
an arrest and conviction. Prior to the officer's command
the situation was that a small group of people occupy-
ing one-half of the sidewalk were engaged in orderly
conversation. Promptly upon the officer's command,
the group began to disperse and only Shuttlesworth re-
mained. He, alone, cannot be held to have blocked the
sidewalk. His rhetorical questions may have irritated
the patrolman; but a policeman's lot is not a happy one—
and certainly, in context, Shuttlesworth's questions did
not rise to the magnitude of an offense against the laws
of Alabama. If one were to confine oneself to the surface
version of the facts, a general alarm for the people of
Birmingham would be in order. Their use of the side-
walks would be hazardous beyond measure.

But this, of course, is fiction. It is facade for a nar-
rower, but no less disagreeable, truth. On April 4, 1962,
the Negroes of Birmingham were engaged in a "selective
buying campaign"—an attempted boycott—of Birming-
ham's stores for the purpose of protesting discrimination
against them. Shuttlesworth and his companions were

Negroes.[3] They were standing in front of a department store. Shuttlesworth, as an officer who participated in the arrest testified, was a "notorious" person in the field of civil rights in Birmingham.[4]

In my view the net effect of the facts in this case is inescapable. Shuttlesworth's arrest was an incident in the tense racial conflict in Birmingham. This may explain the arrest, but it adds nothing to its lawfulness. There is no basis in the facts and circumstances of the case for charging that Shuttlesworth was "blocking free passage" on the sidewalk, *Middlebrooks, supra,* at 527, 170 So. 2d, at 426, or that he culpably refused to obey an order of an officer to move on, or remained after such an order so as to justify arrest, trial or conviction. Any attempt to punish Shuttlesworth in these circumstances would, in my view, violate the Fourteenth Amendment of the Federal Constitution.

---

[3] Testimony of Officer Renshaw (R. 49). Officer Byars testified that he didn't know what color they were (R. 27, 36).

[4] The principal arresting officer testified that he did not recognize Shuttlesworth, but he had seen his picture on television. He had heard of him, had read that he had frequently been arrested, and that he had been in the Birmingham jail. Shuttlesworth's walk on April 4, 1962, started during a recess in a federal court civil rights trial in which he was involved. The trial had been publicized.