## Commonwealth v. DeFrancesco

*G. Roger Markley, Assistant District Attorney,* for Commonwealth.

*James M. McNamara,* for defendant.

RUFE, *J.*, August 5, 1975—Defendant was convicted after trial before a jury under section 5502 of the Crimes Code, failure of disorderly persons to disperse upon official order. He has filed the present motion for a new trial and in arrest of judgment which has been argued before the above court en banc. Hence, this opinion.

Defendant raises three contentions in support of his motion: (1) The evidence was insufficient as a matter of law; (2) a defendant cannot be guilty of failing to disperse when he is alone; and (3) the statute in question is unconstitutional because it is vague and overbroad.

The evidence, viewed in the light most favorable to the conviction-winning Commonwealth, established that at approximately 7 to 7:30 p.m. on the day in question a group of about 25 young people, aged 16 through 24 and including defendant, had gathered in a small park in the center of Quakertown where they were drinking beer, blocking traffic in the street, yelling obscenities at passersby, throwing beer cans around and urinating in public. From 7:30 to 10:30 p.m. that same evening, police patrols warned the young people to cease and move on, all to no avail. At 10:30 p.m., police reinforcements were called in to break up the group, which still included defendant as one of the principal agitators, and an arrest was made of one Kenneth Kramer, who was urinating on private property between two buildings. At that point, one George Howard attempted to interfere in the arrest and he, too, was arrested. These two individuals were transported to police headquarters while other officers attempted to clear the area. Two more individuals, Joseph Frank and John Howard, were instructed specifically to leave, and, on so refusing,

were also arrested and transported to the police station which was in the rear of the borough hall and across the street from the small park where the major disturbance was occurring.

As the arresting officers were processing the arrest of Mr. Frank and Mr. Howard, they observed a group of seven to ten more of the youths, led by defendant and one Roger Leonard, gathered outside the police station door. Mr. Leonard was banging on the door itself and both he and defendant were loud, boisterous and shouting obscenities. Leonard was arrested immediately and defendant and all the others were ordered to disperse. At that point, all of the others, with the exception of defendant, retreated to a point on the street where they waited for defendant. Defendant, however, continued his verbal abuse and profanity as he backed away from the police officers for a distance of 95 to 110 feet while the arresting officers continued to approach him and continued to order him to leave, at which point defendant was arrested and charged with the instant crime.

Needless to say, defendant's version of the incident was somewhat different, but was rejected by the jury.

Section 5502 of the Crimes Code[1] provides as follows:

"Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing the law may order the participants and

---

1. Act of December 6, 1972, P.L. 1068 (No. 334), sec. 1, effective June 6, 1973, 18 Pa.C.S. §5502.

others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree."

## SUFFICIENCY OF THE EVIDENCE

Defendant's first contention maintains that the evidence was insufficient as a matter of law because there was no evidence of three disorderly persons when defendant was ordered to disperse.

Certainly, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth must be given all reasonable inferences arising therefrom: Commonwealth v. Reed, 458 Pa. 8, 326 A. 2d 356 (1974). Defendant's argument on this point apparently stems from the fact that when defendant was ordered to disperse, the evidence established that of the group of seven to ten persons gathered outside the police station's door, only two, Roger Leonard and defendant, were actually being disorderly.

We reject this contention. The criminal section in question does not require three or more persons to be guilty of *disorderly conduct* before this section applies. It requires only that three or more persons be *participating in a course of disorderly conduct*.

In this situation, two persons were clearly being disorderly and the remaining five to eight other persons in the group with them were participating in their disorderly conduct by providing the support of numbers, the intimidation of an imminent riot, the tacit threat of physical force and the implicit defiance of authority, all from their mere presence in apparent approval of the disorderly actions of defendant and his cohort. We believe that one person being disorderly in a crowd that is apparently

sympathetic to him can create an explosive situation which this section of the crimes code is designed to prevent, and the police do not have to wait until the "bomb" goes off, when everybody in the crowd has actively joined in the disorderly activity, to act.

## FAILURE TO DISPERSE

Defendant's second contention maintains the court erred in charging the jury that he could be found guilty of failing to disperse after the rest of his group dispersed and defendant failed to do so. The argument maintains that everyone else having obeyed the order by dispersing, defendant remaining alone with the police in defiance of the order has, in effect, dispersed in that he is no longer with his group.

While this is a most ingenious argument, it neglects one thing: The gravamen of the offense is the failure to obey the police order to disperse. In order to avoid violation of this provision of the code, the person ordered to disperse must take express and explicit affirmative action in compliance with the order. He cannot comply with the order by continuing his disorderly conduct unabated and refusing to take any dispersal action himself. He cannot adopt the law-abiding actions of his companions and claim their actions as his own compliance with the police order.

## UNCONSTITUTIONALITY

Defendant's third and final contention maintains that this criminal provision is unconstitutional because it is vague and overbroad. Specifically, defendant argues that the statute is vague because it does not inform a person ordered to disperse how far

he must move away from his companions or how long he must stay away from them in order to comply with the order. The "overbroad" argument stems from the fact that the police order may be directed to the "participants *and others* in the immediate vicinity," thereby affecting possible law abiding citizens who may be engaged in constitutionally protected activity.

In support of his vagueness argument, defendant relies on Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S. Ct. 839 (1972), a case in which the United States Supreme Court invalidated a city vagrancy ordinance directed at "rogues and vagabonds, or dissolute persons who go about begging, . . . common drunkards, common night walkers . . . lewd, wanton and lascivious persons, . . . common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, . . . [and] persons able to work but habitually living upon the earnings of their wives or minor children . . ."

The court in that case reiterated the standard that an ordinance is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute (United States v. Harriss, 347 U.S. 612, 617, 74 S. Ct. 808 (1954)), and if it encourages arbitrary and erratic arrests and conviction: Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736 (1940); Herndon v. Lowry, 301 U.S. 242, 57 S. Ct. 732 (1937).

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair

warning that certain kinds of conduct are prohibited.": Colten v. Kentucky, 407 U.S. 104, 92 S. Ct. 1953 (1972).

"Words inevitably contain germs of uncertainty . . . '[as] there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' ": Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S. Ct. 2908 (1973).

Defendant asks how is he to know from the statute when he has satisfactorily "dispersed." The answer is simple: when he is no longer a threat to cause substantial harm, serious inconvenience, annoyance or alarm. The time and distance may vary under the particular circumstances surrounding the incident, but we believe that it is clear to any person of reasonable intelligence that he has not dispersed if he remains in a position that poses the threat and danger the statute seeks to prevent. We conclude that section 5502[2] is not vague as claimed by defendant.

Defendant refers us to Shuttlesworth v. Birmingham, 382 U.S. 87 (1965), in support of his contention that the criminal statute in question is overbroad. In Shuttlesworth, the United States Supreme Court struck down a Birmingham, Alabama, ordinance which provided: "It shall also be unlawful for any person to stand or loiter upon

---

2. See footnote 1.

any street or sidewalk of the city after having been requested by any police officer to move on.'" Quite obviously, that provision was found to be unconstitutionally overbroad because it permitted any person to stand on any Birmingham public sidewalk only at the whim of any police officer of that city.

Defendant argues that the overbreadth of the instant statute stems from the fact that the police dispersal command extends to possible innocent bystanders as well as to the disorderly persons. However, at no time does defendant claim to be in the "innocent bystander" category, and, indeed, the evidence taken even in the light most favorable to defendant (which was rejected by the jury) would deny him that description. Consequently, defendant has no standing to raise the unconstitutionality of this provision as it might apply to "innocent bystanders." "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. [citing cases] A closely related principle is that constitutional rights are personal and may not be asserted vicariously.": Broadrick v. Oklahoma, supra. Accordingly, we reject this contention of defendant.

Finally, we note that defendant understandably failed to call our attention to Colten v. Kentucky, supra, in which the Supreme Court upheld against a constitutional "vagueness" and "overbroad" attack the Kentucky State disorderly conduct statute which provided, inter alia:

" '(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . .

" '(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . .' "

The facts in the Colten case are remarkably bland as compared to those in the instant case. Colten was driving a car behind a friend's car when the friend was stopped by the police. Colten also stopped and came to his friend's car to find out why his friend had been stopped. The police told him it was none of his affair and that he should move on and clear the road. Colten responded that he intended to stay and see what happened to his friend, whereupon he was arrested and convicted under the Kentucky statute quoted above. The United States Supreme Court affirmed the conviction and specifically rejected vagueness and overbroad arguments substantially similar to those raised here.

For the foregoing reasons, defendant's motions for a new trial and in arrest of judgment are denied, and we enter the following

## ORDER

And now, August 5, 1975, defendant's motions for new trial and in arrest of judgment are hereby denied and defendant is ordered to appear for sentencing at 10 a.m. on August 21, 1975, in Court Room No. 3.