320 So.2d 739

**Betty COUGHLIN**

**v.**

**STATE.**

**6 Div. 956.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

George W. Harris, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, Jr., Birmingham, for the State.

BOOKOUT, Judge.

The appellant was charged in the Criminal Court of Jefferson County with violation of Section 47, Act No. 516, Acts of Alabama 1949, approved August 30, 1949 [Title 36, Section 58 (47) Code, Recompiled 1958]: "Obedience to police officers. No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic."

She was ·found guilty, fined $50 and costs and appealed to Circuit Court for a jury trial de novo which resulted in a verdict of guilty and assessment of a fine of $1 by the jury.

The appellant gave notice of appeal to this court and filed a motion for a new trial in the trial court. On March 14, 1975 the trial court overruled the motion ·for a

new trial and assessed a hard labor sentence of ten days for failure to either pay the fine or to confess judgment and post sufficient security therefor. In addition the court found the cost to amount to $101.50 and sentenced the appellant to an additional 23 days at hard labor to pay such costs.

The testimony establishes that on July 27, 1974, a work crew from the Jefferson County Engineering Department was sent to do some work across the street from the appellant's residence. They were digging a ditch with a backhoe machine to lay some drain pipe when the appellant informed them that their work would change the flow of drainage and severely damage her property. She informed them of the existence of a Circuit Court injunction forbidding the changing of the water flow in the neighborhood. Such injunction was never introduced in the trial; neither did the trial judge take judicial notice of it as an official record of the Circuit Court.

The workmen discontinued the project temporarily while the backhoe operator called his supervisor. Two employees of the County Engineering Department, who were also specially deputized by the County Sheriff, arrived at the scene a short time later. One of them, Mr. W. D. Ragland, ordered the work to continue. The appellant then jumped into the ditch to prevent the continued digging. She was ordered by Mr. Ragland to go in her house and let the work continue, when she refused and was arrested.

The backhoe operator testified that, "I was sent out to install a drain pipe for a man on Mann Drive. I don't recall his name. I had orders to install the pipe for him." The work was being done on the county's right-of-way about three feet from and parallel to Mann Drive.

W. D. Ragland testified that he was employed at that time by the County Engineering Department and his duties were to weigh trucks and, "go around and do other duties that the County Commissioners ask us to do." In relation to traffic he said his duty was to weigh trucks and ". . : work traffic where the county works, and all other things like that." On cross examination he said he was not responsible to Sheriff Mel Bailey but rather to a member of the County Commission.

Specifically Mr. Ragland stated: "And I instructed her to go back in the house and let him go ahead and continue with his duties. And she said she would not."

A. J. Miller testified that he arrived at the scene with Mr. Ragland, his partner, that he was deputized but his duties were as a truck weight inspector for the County Engineering Department. He testified in part as follows:

"Q  Okay. Did Mr. Ragland have some conversation with her?

"A  He asked her, he ordered back in the house.

"Q  Okay. Did you hear that, were you right there?

"A  Yes, sir.

"Q. Okay. What did she do?

"A  She said no, sir, she wasn't going in the house.

"Q  What happened then?

"A  He told her that she would have to go in the house or he would place her under arrest.

"Q  What did she say?

"A  She said no sir, that I wasn't.

"Q  Was she placed under arrest?

"A  Yes, sir."

On cross examination he said: "We ordered her to go back in the house."

Mr. Bobby Whatley, a truck driver for the County Engineering Department, testified concerning the project in question as follows:

"A Well, we were laying pipe for the man across from Mrs. Coughlin, and leveling the yard up to make it look nicer, easier to mow and everthing, put in drain pipes."

No state's witness testified that there was any traffic congestion or traffic problem connected with the project. There was no evidence that the appellant was in any way an obstacle to traffic or that her actions impeded the flow of traffic. There was no scintilla of evidence that the alleged "deputy sheriffs" were in any way directing, controlling or regulating traffic at the scene of the work project. And indeed, there is no evidence that the digging in question was a bona fide county project, other than the mention that the ditch was on county right-of-way.

### I.

Appellant contends that Messrs. Ragland and Miller were not official police officers pursuant to Act No. 516, supra, and had no authority to issue their order to her. The Attorney General argues that the two county employees were duly deputized and acting in accordance with the law. We here note that on April 28, 1975, the Attorney General issued a letter opinion to Jefferson County Sheriff Mel Bailey to the opposite effect, advising Sheriff Bailey that the County Commission had no authority to appoint special agents, commissioned as Deputy Sheriffs, to weigh trucks, effect arrests and perform other law enforcement related activities. That opinion further advised that the Sheriff of Jefferson County could only appoint deputies pursuant to the County Civil Service law and concluded that, "it is not legal and proper for you to commission these special agents hereinabove mentioned as special deputies for the Jefferson County Commission."

■ We agree with the argument of the Attorney General in the instant case that the above opinion is advisory only and not legally binding. It does however raise doubt as to the legality of the use of such special deputies. Although this court has grave doubt as to the authority of the two special deputies, it is not necessary that we pass on this issue in disposing of this appeal.

### II.

The case should be reversed on the failure of the state to establish that the order given the appellant was a "lawful order." This matter was properly brought to the trial court's attention in the appellant's motion for a new trial, which was overruled. The motion should have been granted. *Phifer v. City of Birmingham,* 42 Ala.App. 282, 160 So.2d 898 (1964).

■ Act 516, supra, was enacted as a traffic control measure and as a comprehensive amendment to that body of law commonly known as "Rules of the Road." Section 47 was not intended to, does not, and cannot give police officers unbridled power to arrest for refusal to obey any order they may choose to direct at a citizen. The title of Act 516 is as follows:

"To regulate further the use of the highways of the State by pedestrians and vehicles; prescribing equipment of certain vehicles and further prescribing rules and regulations governing traffic and the operation of vehicles on the highways; providing the method of enforcing this Act; and prescribing penalties for violations hereof."

■ Each Act of the legislature must have but one subject which is clearly set out in its title. An Act may contain a number of minor subjects provided they are capable of being combined as to form only one major or comprehensive subject. Article 4, Section 45, Constitution of Alabama 1901; *Boswell v. State,* 290 Ala. 349, 276 So.2d 592 (1973). Thus we must attempt to give Section 47 a field of opera-

tion in relation to the purpose and intent of Act No. 516, or else it is constitutionally obnoxious. We therefore must construe the meaning of the Act in such a manner so as to give it a constitutional field of operation, if possible.

■ It is the opinion of this court that Section 47, supra, relates to the direction, control or regulation of traffic and thus for an order of a police officer to be "lawful" pursuant to that section, such order must be directly related to the direction, control and regulation of traffic.

■ There was no evidence that the order of the special deputies was related to the direction, control or regulation of traffic. In fact, the incident took place in a ditch some three feet off the roadway. It should also be noted that Mr. Ragland testified that his order was for the appellant to "go back in the house," which was clearly connected in no way with traffic control. *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); *Cruikshank v. City of Birmingham*, 43 Ala.App. 1, 178 So.2d 230 (1965); *Smith v. City of Birmingham*, 42 Ala.App. 467, 168 So.2d 35, (1964); *Phifer, supra.*

Reversed and remanded.

All the Judges concur.