The defendant was charged and convicted of "willfully failing or refusing to comply with a lawful order or direction of an officer invested by law with authority to direct, control or regulate traffic" under the provisions of Alabama Code 1975, Section 32-5-15.
The evidence presented by the State revealed that on the night of November 21, 1977, Alabama State Trooper James M. Gilbreath observed that a headlight on the defendant's automobile was defective. He pursued the defendant for approximately one quarter of a mile with the blue light on his patrol car on before the defendant stopped.
Trooper Gilbreath got out of his vehicle and walked up to the defendant who was standing beside his car. The trooper was dressed in winter uniform which was the same as the uniform he had on at trial "with the exception it was long sleeved." Gilbreath and the defendant were approximately two feet apart. The following occurred:
TROOPER: "Sir, I need to see your driver's license."
DEFENDANT: "For what?"
 TROOPER: "Sir, if you will show me your driver's license, I will be glad to explain."
Trooper Gilbreath testified that the defendant "didn't say anything else. He turned and got in his car and left." Gilbreath pursued the defendant approximately three miles before the defendant stopped. Trooper Gilbreath stated that after the defendant was arrested and on the way to the county jail, the defendant stated that he did not stop because he thought that Trooper Gilbreath was a Glencoe police officer and the defendant had heard rumors that the Glencoe police were harassing the public.
The prosecution is based on the failure of the defendant to show the trooper his driver's license. The defendant contends that this evidence is insufficient as a matter of law to sustain his conviction because: (a) there was no lawful order but only a request; (b) even if the request be construed as an order, it was not directly related to the direction, control and regulation of traffic; (c) the defendant was not required to follow any order or instructions until the trooper had identified himself and stated the reason for stopping the defendant in accordance with Alabama Code 1975, Section15-10-4; (d) the State failed to show that the trooper was on duty; and (e) the State failed to show that the defendant had the capacity to obey the order.
 I
The defendant was indicted and convicted under Section32-5-15 of the Alabama Code 1975 which provides:
 "No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic."
For an order of a police officer to be "lawful" within the meaning of this section, it must be "directly related to the direction, control and regulation of traffic." Coughlin v.State, 56 Ala. App. 225, 228, 320 So.2d 739 (1975). This section "was not intended to, does not, and cannot give police officers unbridled power to arrest for refusal to obey any order they may choose to direct at a citizen." Coughlin,56 Ala. App. at 228, 320 So.2d at 743.
The trooper's "request" to see the defendant's driver's license constituted a lawful order. Alabama Code 1975, Section32-6-9, regulates the possession and display of a driver's license.
 "Every licensee shall have his license in his immediate possession at all times when driving a motor vehicle and shall display the same, upon demand of a judge of any court, a peace officer or a state trooper. However, no person charged with violating this section shall be convicted if he produces in court or the office of the arresting officer a driver's license *Page 916 
theretofore issued to him and valid at the time of his arrest."
Driving with improper lights constitutes a traffic infraction, Opinion of the Clerk, No. 18, 364 So.2d 672, 673
(Ala. 1978), and is a violation of one of the "Rules of the Road." Alabama Code 1975, Section 32-5-240.
Observing a violation of the state traffic and vehicle safety regulations, the State Trooper had a statutory right to request and inspect the driver's operating license. See Delaware v.Prouse, 440 U.S. 648, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660
(1979). The trooper had a right to "request" or "demand" the defendant's driver's license. The driver had a statutory duty to "display the same." Alabama Code 1975, Section 32-6-9. Under these circumstances, the trooper's "request" to see the defendant's license constituted a "lawful order or direction" pursuant to the requirements of Section 32-5-15.
 II
A request to inspect the operating license of one driving an automobile is "directly related to the direction, control and regulation of traffic" as required by Section 32-5-15. SeeCoughlin.
 "[T]he states have a vital interest in insuring that . . . licensing, registration . . . requirements are being observed."
* * * * * *
 "Automobile licenses are issued periodically to evidence that the drivers holding them are sufficiently familiar with the rules of the road and are physically qualified to operate a motor vehicle. The registration requirement and, more pointedly, the related annual inspection requirement in Delaware, are designed to keep dangerous automobiles off the road. Unquestionably, these provisions, properly administered, are essential elements in a highway safety program." Prouse, 99 S.Ct. at 1398-9.
See also State v. Powell, 603 P.2d 143, 147 (Haw. 1979).
 III
The State Trooper was not required to inform the defendant of his authority and reason for inspecting the driver's license. Although Section 15-10-4 provides that "[w]hen arresting a person without a warrant, the officer must inform of his authority and the cause of arrest," the stopping of a motorist by a police officer for a traffic offense does not constitute an arrest.
 "An arrest is to be distinguished from a mere temporary detention, and the stopping of a motorist for a routine check of compliance with requirements of motor vehicle laws, or for questioning or investigation after an apparent violation of such laws does not of itself constitute an arrest. . . ." 61A C.J.S. Motor Vehicles § 593 (1) (1970).
* * * * * *
 "The stopping of a motorist for a routine check of compliance with requirements of motor vehicle laws or for questioning or investigation after an apparent violation of such laws is not in itself an arrest and subject to restriction of law with respect to arrests." 61A C.J.S. Motor Vehicles § 593 (2).
Moreover,
 "An officer who has stopped a motorist for an apparent driving violation or dangerous act has the right to ask for the motorist to display his driver's license and registration without warning him of his privilege to refrain from self-incriminatory statements." 61A C.J.S. Motor Vehicles § 593 (2).
 IV
The defendant also contends that the evidence does not support his conviction because the State did not prove that the trooper was on duty when he requested the defendant's driver's license.
Section 32-5-15 requires the police officer to be "invested by law with authority to direct, control or regulate traffic." Section 32-5-310 specifically provides that "[a]ny *Page 917 
peace officer, including state troopers, . . shall be authorized, and it is hereby made the duty of each of them to enforce the provisions of this chapter and to make arrests for any violation or violations thereof, . . ." Neither section makes any reference to whether the peace officer was on or off duty. This is not the situation where the State must prove that the officer was "engaged in the active discharge of his lawful duty [or duties]" as one of the elements of the offense.Robinson v. State, 361 So.2d 1109 (Ala.Cr.App.), reversed,361 So.2d 1113 (Ala. 1978).
 V
Under the offense charged it was not necessary for the State to prove that the defendant had the capacity to obey the order and that the defendant had a driver's license and refused to present it upon request. The State proved that the defendant willfully and intentionally refused to obey the lawful order of a State Trooper. The evidence affirmatively discloses that no attempt at compliance was made by the defendant. Everyone is presumed to know the law. Miller v. State, 39 Ala. App. 584,105 So.2d 711, cert. denied, 268 Ala. 692, 105 So.2d 714 (1958). In a criminal prosecution the State is not required to prove impossibility of innocence. White v. State, 294 Ala. 265,314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373,46 L.Ed.2d 288 (1975). The fact that the defendant did not have a driver's license and therefore could not obey the trooper's request is a matter in excuse or justification for the violation of the offense rather than an element of the crime. There is no contention in this case that the defendant did not in fact have a license.
Under the facts of this case the defendant could have been convicted of either a violation of Section 32-6-9 for failure to present his driver's license upon request or of Section32-5-15 for the willful failure or refusal to comply with the lawful order of any police officer. However, he could not have been convicted of both offenses.
 VI
The defendant's written requested charges[1] were properly refused because they are incorrect statements of the law as applied to the facts of this case.
We have searched the record for error and have found none. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] The defendant's requested charges are:
Charge No. 4
 "Title 15-10-4, Code of Alabama, 1975: When arresting a person without a warrant, the officer must inform of his authority and the cause of arrest."
Charge No. 5
 "Failure to produce a license upon request of a police officer does not constitute the offense of wilful failure to obey an officer."
Charge No. 6
 "The proper procedure when a driver fails to produce a driver's license is to charge that person with driving without a license."