1962 Ford Thunderbird, Serial #2Y87Z155562, Clarence Trapp, et al., Plaintiffs-Appellees, v. The Division of Narcotic Control of the Department of Public Safety of the State of Illinois, et al., Defendants-Appellants.

Gen. No. 49,485.

First District, First Division.

April 13, 1964.

William G. Clark, Attorney General, of Chicago (William C. Wines, Raymond S. Sarnow, A. Zola Groves and Aubrey Kaplan, Assistant Attorneys General, of counsel), for appellants.

No briefs filed for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The trial court, in an administrative review, set aside an order of the Division of Narcotic Control of the Department of Public Safety forfeiting as contraband a 1962 Ford Thunderbird automobile. The Division found as a matter of fact, and ruled as a matter of law, that the automobile was used in the unlaw-

ful transportation of narcotics, and that the owners of the automobile knew or should have known that it was being so unlawfully used. The Division appeals from the court's decision.

The Superintendent of the Division, who is authorized by statute to hold the hearing (Ill Rev Stats 1963, c 38, § 22–29a), found that on December 12, 1962 the motor vehicle was stopped at about 8:00 p. m. in Chicago, Illinois and the occupants were Patricia Trapp and Robert Stancey. The occupants were arrested by virtue of warrants previously issued. Six vials of Dolophine Hydrochloride were found in the purse of Patricia. She testified that the narcotics in her purse were purchased on prescription. She further stated that she obtained the prescriptions from her husband and that she had been getting prescriptions for Dolophine from a Dr. Jerry B. Neason for approximately two and one-half years. She admitted having prescriptions filled at the Balter pharmacy and that the prescriptions were signed by the doctor prior to his death. Dr. Neason prescribed the same narcotic for her husband. The last time he wrote a prescription for her was about five days previous to his death. At that time he gave her four or five prescriptions. She identified the signature of Dr. Neason on several prescriptions, one in particular dated December 11, 1962, which was several days after the death of the doctor. She further stated that at times the doctor would write nine or ten prescriptions for her husband and herself at one time and post-date them.

Clarence Trapp, husband of Patricia, testified that he was using two or three bottles of Dolophine a day, and that his wife was using substantially the same quantity and that he had been treated by Dr. Neason for approximately five years prior to the doctor's death. He further testified that he last saw the doctor on November 30, 1962 and that the doctor died on December 3, 1962. Clarence identified the signature

of the doctor on several prescription blanks and testified that the doctor gave him about twenty prescriptions the last time he saw him alive. The evidence on the hearing conclusively showed that the owners of the motor vehicle knew of the doctor's death and still continued purchasing narcotics thereafter.

The Division found that the motor vehicle was used for the unlawful transportation of a narcotic drug and that the owners had knowledge, or should have had knowledge, that the prescriptions previously signed by the deceased doctor were not valid prescriptions after death. The order of the Division was that the interest of the owners, Clarence and Patricia Trapp, in the motor vehicle, and the motor vehicle be forfeited to the State of Illinois. In the order the Division states that to follow any other reasoning but that the death of the doctor voided these prescriptions, would mean that a doctor could write prescriptions that were to be filled for several years subsequent to his death without making an examination of the patient.

No appearance or brief was filed in this court by plaintiffs-appellees.

The Division argues that the prescriptions would be illegal even if the doctor were still alive. They say reason, logic and common sense declare that the purchase of drugs on post-dated prescriptions clearly frustrates the intent of the Narcotics Act and that a prescription should be issued only upon an examination of the patient and a determination of his present need for the drug. The Division further contends that a prescription for narcotics expires upon the death of the prescriber.

The Uniform Narcotic Drug Act of 1957 (Ill Rev Stats 1963, c 38, §§ 22.1–22.49), makes it unlawful for any person to possess or have under his control any narcotic drug, except as authorized by the Act.

10

Par 22–11 provides that:

> "A physician may prescribe for narcotic drugs to his patient when the patient is suffering from a disease, ailment . . . other than for addiction. A physician shall prescribe . . . a narcotic drug only when, in good faith, he believes the disease, ailment . . . requires such treatment and only in such quantity and for such length of time as are reasonably necessary. . . ."

Par 22–18 provides:

> "A pharmacist, in good faith, may sell and dispense narcotic drugs to any person upon a written prescription of a physician, *dated and signed by the person prescribing on the date when issued* . . ."

Rule 5 of the Rules and Regulations adopted by the Division pursuant to the Uniform Narcotic Drug Act, is as follows:

> "All prescriptions for narcotic drugs . . . shall be signed and dated by the practitioner . . . as of the day on which it was issued."

Par 22.26 authorizes the confiscation and forfeiture of a vehicle if any narcotic drug is unlawfully possessed by any occupant thereof.

The hearing officer based his ruling only on the fact that the drug was purchased with prescriptions after the prescriber had died and that, therefore, the prescriptions were invalid and ineffective. On appeal the Division makes the additional point that postdating of a narcotic drug prescription is not authorized under the Act.

■ Both points appear to be of first impression in this jurisdiction. The first point that the death of the prescriber voids and makes ineffective a prior proper prescription seems to us to be untenable. Nothing in the Act directly indicates this. The reasoning of the hearing officer assumes that the practice

11

of issuing post-dated prescriptions is a valid practice. He ruled on all the facts before him and acted only on the proposition of the doctor's demise. It is general practice in the medical profession to issue prescriptions covering a period of treatment when medication can only be obtained on a prescription that cannot be refilled. Therefore, unless the Act specifically bars such practice we must assume it applies to all classes of prescriptions. The Act limits prescribing to "only in such quantities and for such length of time as are reasonably necessary," if prescribed in "good faith." Therefore, where the prescriber while acting in good faith, as the evidence here indicates, makes prescriptions for narcotic drugs in such quantities and for such length of time as are reasonably necessary, such prescriptions may be *used* lawfully even after the prescriber's death.

On the second point, the Division contends that each prescription must be made upon separate examination and determination of present need for the drug and therefore the post-dating is unlawful. Again, we must look to the Act to determine if this is specifically provided for. "While we may take judicial notice of the evils of narcotics traffic, and of the legislative aim at repressing such evil in enacting the statute, we think at the same time to support the construction urged by the Division the terms of the statute would have to be much clearer than they are." Boling v. Division of Narcotic Control of Department of Public Safety, 24 Ill2d 305, 308, 181 NE2d 147 (1962); cf. Ben Ali v. Towe, 30 NJ Super 19, 103 A2d 158. Par 22–11 of the Act authorizes the physician to prescribe in quantity and for a reasonable length of time and Par 22–18 directs that the pharmacist, in good faith, sell or dispense upon a written prescription *"dated and signed by the person prescribing on the date when issued."* It is evident that there is a difference of in-

12

terpretation of these terms between the Division as applied by the hearing officer and as argued here. Should the physician date his prescriptions all on the same date or should the pharmacist sell and dispense on the date on the prescription? To hold that a physician may prescribe in such quantities and for such reasonable time as necessary and then limit the period to the date of the prescription, would be inconsistent. Then again, to require the pharmacist to sell and dispense on the same date the quantity prescribed for such length of time as was reasonably necessary would defeat the *intent* of the Act.

We, therefore, find that to give practical and intended effect would be to hold that a physician may prescribe narcotic drugs, in good faith, to a patient when the patient is suffering from a disease or ailment, in quantity, and for a time reasonably necessary so long as he dates the prescriptions on the date they may be required and for such reasonable length of time. The pharmacist is authorized to sell and dispense on such prescriptions only on the dates they bear. We believe no other construction can logically be given. If the Division believes it conflicts with their rule then the rule is in derogation of the Act and cannot be binding in this case.

We believe the Trapps were lawfully entitled to the prescriptions as indicated by the record and had cause to believe they were acting in a proper manner. There was no showing that they acted in bad faith. The Division rule could not effect their responsibility because "a person's reasonable belief that his conduct does not constitute an offense is a defense if (1) the offense is defined by an administrative regulation or order which is not known to him and has not been published or otherwise made reasonably available to him, and he could not have acquired such knowledge by the exercise of due diligence, pursuant to facts

13

known to him." Ill Rev Stats 1963, c 38, § 4.8. We believe from the facts in this case it would be unjust and improper to confiscate the vehicle. "The words of the statute must be read in a reasonable, common sense manner, and serious as the evils of the narcotic traffic undoubtedly are, it is not supposed that the legislature intended a forfeiture . . ." under these circumstances. 1957 Chevrolet v. Division of Narcotic Control of Department of Public Safety, 27 Ill2d 429, 433, 189 NE2d 347 (1963). As further stated in the Boling case, page 308, "The term 'unlawful' has been defined as being that 'which is contrary to law or unauthorized by law' (Black's Law Dictionary 3rd ed p 1784,), and we believe its use in the forfeiture statute necessarily contemplates that there be some rational relation between the use of the vehicle and an unlawful purpose." The relation here was casual, not causal. Ben Ali v. Towe, 30 NJ Super 19, 103 A2d 158.

For the reasons stated the court properly ordered a return of the automobile. No error having been shown, the order is accordingly affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.