368 So.2d 317 (1979)
STATE
v.
Ferdinand D. BRADFORD, Jr.
6 Div. 724.
Court of Criminal Appeals of Alabama.
March 6, 1979.
*318 William J. Baxley, Atty. Gen. and L. G. Kendrick, Asst. Atty. Gen., for the State.
Arthur Parker, Ira H. Kline, Birmingham, for appellee.
BOOKOUT, Judge.
Ferdinand D. Bradford, Jr., a licensed physician, was indicted by the Jefferson County Grand Jury for violation of Act No. 1407, § 505, Acts of Alabama 1971, approved September 16, 1971 (now § 20-2-74, Code of Ala.1975). The indictment, omitting the formal parts, is as follows:
"FERDINAND D. BRADFORD, JR., whose name is to the Grand Jury otherwise unknown, a physician licensed to practice under the laws of the State of Alabama, did on to-wit: June 21, 1977, unlawfully violate section 258(58) of Title 22 known as the Alabama Uniform Controlled Substances Act, in that he to-wit: issued a prescription for Robitussin AC, a controlled substance, and Tenuate dospan, a controlled substance, to Tyrone Anderson going by the name of Tyrone Holmes and that such prescription was not issued in good faith for a legitimate medical purpose in the usual course of his professional practice and such prescription for Robitussin AC and Tenuate Dospan was in fact subsequently filled by a pharmacist,
"2nd: The Grand Jury of said county further charge that before the finding of this indictment FERDINAND D. BRADFORD, JR., whose name is to the Grand Jury otherwise unknown, did on to-wit: June 21, 1977, violated section 258(58) of the Alabama Uniform Controlled Substances Act in that he to-wit: issued a prescription for tenuate dospan, a controlled substance, to Tyrone Anderson going by the name of Tyrone Holmes and such prescription was issued in the fictitious name of Mary Glisson not in good faith for a legitimate medical purpose in the usual course of his professional practice and such prescription for tenuate dospan was in fact subsequently filled by a pharmacist,
"3rd: The Grand Jury of said county further charge that before the finding of this indictment FERDINAND D. BRADFORD, JR., whose name is to the Grand Jury otherwise unknown, did on to-wit: June 21, 1977, violated section 258(58) of the Alabama Uniform Controlled Substances Act in that he to-wit: issued a prescription for Ionamin, a controlled substance to Tyrone Anderson going by the name of Tyrone Holmes and such prescription was issued in the fictitious name of Janice Ward not in good faith for a legitimate medical purpose in the usual course of his professional practice and such prescription for ionamin, was in fact subsequently filled by a pharmacist,
"4th: The Grand Jury of said county further charge that before the finding of this indictment FERDINAND D. BRADFORD, JR., whose name is to the Grand Jury otherwise unknown, did on to-wit: June 21, 1977, violated section 258(58) of the Alabama Uniform Controlled Substances Act in that he to-wit: issued a prescription for tepanil ten-tab, a controlled substance to Tyrone Anderson going by the name of Tyrone Holmes and such prescription was issued in the fictitious name of Joyce Banks not in good faith for a legitimate medical purpose in the usual course of his professional practice and such prescription for tepanil ten-tab was in fact subsequently filled by a pharmacist,
"5th: The Grand Jury of said county further charge that before the finding of this indictment FERDINAND D. BRADFORD, JR., whose name is to the Grand Jury otherwise unknown, did on to-wit: June 21, 1977, violated section 258(58) of *319 the Alabama Uniform Controlled Substances Act in that he to-wit: issued a prescription for Quaalude, a controlled substance, to Tyrone Anderson going by the name of Tyrone Holmes and such prescription was issued in the fictitious name of Dorothy Smith not in good faith for a legitimate medical purpose in the usual course of his professional practice and such prescription for Quaalude was in fact subsequently filled by a pharmacist,"
The pertinent section of the statute under which appellee was charged is as follows:
"Section 505. (Rules and Regulations Pertaining to Administering, Dispensing, and Prescribing by Practitioners.) It shall be unlawful for any practitioner of dentistry to prescribe, administer, or dispense any controlled substance enumerated in Schedules I through V for any person not under his treatment in his regular practice of his profession or for any practitioner of veterinary medicine to prescribe, administer, or dispense any controlled substance enumerated in Schedule I through V for the use of human beings. Provided, however, that the provisions of this section shall be construed not to prevent any lawfully authorized practitioner of medicine from furnishing or prescribing in good faith for the use of any habitual user of substances enumerated in Schedules I through V who is under his professional care such substances as he may deem necessary for their treatment, when such prescriptions are not given or substances furnished for the purpose of maintaining addiction or abuse. Any person who violates this section shall be guilty of a felony and shall on conviction thereof be subject to imprisonment for not less than 2 nor more than 15 years."
Counsel for the appellee filed a demurrer to the indictment alleging, among other grounds, that the facts as alleged did not violate the statute; that the statute "does not proscribe conduct of a licensed physician in and about the issuing of prescriptions for controlled substances." Ground 12 of the demurrer contended that the statute violated the appellee's rights under the state and federal constitutions as being vague, indefinite and overbroad; failing to sufficiently put the appellee on notice as to his duties as a licensed physician in issuing prescriptions for controlled substances; and that it fails to meet due process of law.
The trial judge sustained the appellee's demurrer to the indictment holding that the statute was "unconstitutional as to licensed physicians in that said section is vague and ambiguous and does not fully apprise a licensed physician as to what constitutes unlawful conduct as regards prescribing of controlled substances." The State appealed the ruling of the trial court to this court.

I
The statute in question (referred to throughout the record by its unofficial designation as Title 22, § 258(58), Code of Ala.1940) clearly and patently applies only to dentists and veterinarians by its expressed terms.
In its simplest form, the statute states that it shall be unlawful for (1) a practitioner of dentistry to prescribe certain drugs to a person not his patient, or (2) a practitioner of veterinary medicine to prescribe certain drugs for human use. Nowhere in § 505 does the legislature state that it shall be unlawful for a practitioner of medicine to do anything. A limitation or rule of construction is added to § 505 stating that the section "shall be construed not to prevent any lawfully authorized practitioner of medicine from furnishing or prescribing in good faith for the use of any habitual user of substances enumerated . . . who is under his professional care such substances as he may deem necessary for their treatment" when the drugs are not to maintain addiction. (Emphasis supplied.)
Whatever the purpose of the quoted rule of construction, the act could not be construed as applying to physicians, regardless of whether or not they act in good faith, simply because the only prohibitions in the statute specifically apply only to dentists and veterinarians.
*320 It would take a strained and convoluted construction to apply the criminal sanctions of § 505 to a physician. One of the most elementary principles governing the review of criminal cases is that criminal statutes must be strictly construed in favor of the persons sought to be subjected to their operation. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). In Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952), the Alabama Supreme Court restated that fundamental principle by quoting from cases of longstanding historical importance in this state:
"`* * * "A penal statute cannot be extended by implication or construction to cases within the mischief, if they are not at the same time within the terms of the act, fairly and reasonably interpreted.". . .'"
Likewise, in Fuller the Supreme Court quoted from Young v. State, 58 Ala. 358 (1877):
"The rule is, that penal laws are not by construction to be made to embrace cases not plainly within their meaning. . . .
One who commits an act which does not come within the words of a penal statute, according to the general and popular understanding of them, when they are not used technically, is not to be punished thereby, merely because the act contravenes the policy of the statute."
The clause in § 505, supra, referring to practitioners of medicine is clearly not penal in nature, but is merely a rule of construction or at most a statement of "policy."
Statutes should be given a constitutional construction when possible, and we construe § 505, supra, as being constitutional in its application to those persons coming within its purviewdentists and veterinarians. But, being constitutional as written and being applied in an unconstitutional manner are two different propositions. We consider the act to be constitutional on its face, yet the State attempted to enforce it in a very unconstitutional manner against a person to whom it did not apply.
The dissenting opinion (which was originally written as the majority opinion) cites United States v. Moore, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975) as authority to validate the indictment, however, Moore is based upon a federal statute that in no detail resembles the Alabama statute in question. Neither is light shed upon the issue by looking to other foreign jurisdictions for definitions of and constructions placed upon the term "good faith" as used in statutes completely dissimilar to ours.

II
There is an additional reason for affirming the trial court. The indictment is patently defective even under the State's interpretation of the statute. Assuming, arguendo, that the statute did apply to physicians, then the indictment would additionally have to charge that the defendant prescribed the drugs to a habitual user for the purpose of maintaining addiction or abuse.
Count One merely states that the defendant prescribed a drug to "Tyrone Anderson going by the name of Tyrone Holmes," that the prescription was not issued in good faith and was later filled by a pharmacist. Such wording fails to track any of the wording of the statute. Count Two alleges the same except it adds that the prescription was issued in the fictitious name of Mary Glisson. Counts Three, Four and Five allege the same except different drugs and different fictitious names.
It escapes us what relationship to the statute a prescription has that was issued to "Tyrone Anderson going by the name of Tyrone Holmes" as set out in Count One. Likewise, we find no reference to a fictitious name anywhere in the statute. Evidently, the State relies upon the "evil" of writing a prescription (1) in a fictitious name and (2) not in good faith for a legitimate medical purpose in the usual course of the defendant's professional practice. The only words in the five allegations of the indictment which even appear in the statute are: "in good faith."
If construed as a prohibition at all, the pertinent section would prohibit: (1) a "practitioner of medicine" from (2) furnishing *321 one of the schedule drugs (3) not in good faith (4) to a habitual user (5) for the purpose of maintaining addiction or abuse. Thus, taking the wording of the clause in question and reversing the phraseology (which is necessary to write it as a prohibition), it is readily apparent that not one of the charges in the indictment even comes close to describing the conduct which the State says the statute prohibits. None of the above five elements, except "good faith" (or lack thereof), is even set out in the indictment. Therefore, the indictment would be totally defective if the State's theory was, by the widest stretch of judicial construction, correct. We therefore hold that the trial court properly sustained the demurrer to the indictment.
AFFIRMED.
TYSON and BOWEN, JJ., concur.
HARRIS, P. J. and DeCARLO, J., dissent.
TYSON, Judge, concurring:
I concur with Judge Bookout in this cause. In addition to the reasons stated by Judge Bookout, I wish to also point out that under the statute under which Dr. Bradford was charged (Act No. 1407, Acts of Alabama 1971), the State, in Count 1, failed to specify who the pharmacist was, who filled the prescription in question, and, in addition, failed in any way to indicate whether such prescription was administered, used, sold, given away, or otherwise disposed of to presumably some type of habitual user, or other individual, for purposes of maintaining addiction or abuse.
In addition to the above, which affects all five counts, in my judgment, Counts 2 through 5 fail to aver that Ferdinand D. Bradford, Jr., was acting as a licensed medical practitioner or physician.
For all of the reasons herein enumerated, I view all five counts as being defective, and the trial court therefore correctly sustained the demurrer to the indictment in this cause.
DeCARLO, Judge, dissenting.
I respectfully dissent for the following reasons:
Section 20-2-74 of the Alabama Uniform Controlled Substances Act, Code of Alabama 1975, reads:
"(a) It shall be unlawful for any practitioner of dentistry to prescribe, administer or dispense any controlled substance enumerated in schedules I through V for any person not under his treatment in his regular practice of his profession or for any practitioner of veterinary medicine to prescribe, administer or dispense any controlled substance enumerated in schedules I through V for the use of human beings; provided, however, that the provisions of this section shall be construed not to prevent any lawfully authorized practitioner of medicine from furnishing or prescribing in good faith for the use of any habitual user of substances enumerated in schedules I through V who is under his professional care such substances as he may deem necessary for their treatment, when such prescriptions are not given or substances furnished for the purpose of maintaining addiction or abuse.
"(b) Any person who violates this section shall be guilty of a felony and shall, on conviction thereof, be subject to imprisonment for not less than two nor more than 15 years. (Acts 1971, No. 1407, p. 2378, § 505.)" [emphasis added.]
Specifically, Dr. Bradford was charged, in a five-count indictment, with writing prescriptions for controlled drugs to fictitious persons, for no legitimate medical purpose, and issuing them to a person with whom he had no doctor-patient relationship.
After Dr. Bradford was arraigned on July 29, 1977, he entered a plea of not guilty. Trial of the case was set for January 3, 1978.
On October 21, 1977, counsel for Dr. Bradford filed a demurrer to the indictment, alleging that § 258(58), supra, was constitutionally vague and indefinite. At that time the demurrer was overruled.
On January 4, 1978, after reconsidering the indictment and demurrer, the trial judge ruled that § 258(58), supra, was unconstitutional *322 because it was vague and ambiguous as applied to a licensed physician.
The order, in pertinent part, stated:
"This the 5th day of January, 1978, the Court after reconsidering the indictment and demurrer thereto specifically as to ground 12 of the demurrer, and [sic] the Court is of the opinion that Title 22 Section 258(58) (1975 Code 20-2-74) is unconstitutional as to licensed physicians in that said section is vague and ambiguous and does not fully apprise a licensed physician as to what constitutes unlawful conduct as regards prescribing of controlled substances."
In its order, the court specifically stated that its reconsideration of the demurrer was based on appellee's ground 12. The demurrer, including ground 12, states that the appellee demurs to the indictment on several grounds, as follows (omitting formal parts):
"1. That it is void.
"2. That it is voidable.
"3. That no offense is alleged.
"4. That no facts are alleged which constitute an offense.
"5. That the facts as alleged are not alleged to be unlawful.
"6. That the facts as alleged are vague, indefinite, overbroad and the Defendant is not apprised of that which he is called upon to defend.
"7. That the facts as alleged do not violate Section 258(58) of Title 22 of the Alabama Uniform Controlled Substances Act.
"8. That said Section 258(58) is vague, indefinite and overbroad as to any duty imposed upon a licensed physician.
"10. That the provisions of Section 258(58) do not put the Defendant on proper notice as to what conduct is unlawful in regard to a licensed physician issuing prescriptions for controlled substances.
"11. That the Defendant as a licensed physician, is not subject to the prohibitions set out in said Section 258(58).
"12. That said Section 258(58) is violative of this Defendant's rights under the Constitution of the State of Alabama and the Constitution of the United States of America, separately and severally, as follows, separately and severally:
"(a) It is vague, indefinite and overbroad.

"(b) It does not sufficiently put the Defendant on notice as to his duties as a licensed physician in issuing prescriptions for controlled substances.

"(c) That it does not meet due process of law." [emphasis added.]

I
It is the State's position that the trial court erred in sustaining the appellee's demurrer to the indictment. The State argued that the phrase "in good faith," as it is used in the statute, has been formerly construed in similar statutes in a manner which establishes a clear and unambiguous criteria for determining when and if, in fact, good faith was used in prescribing medications.
Numerous cases have been cited by the State for the purpose of clarifying the term, "prescribing in good faith." It is the State's position that, through case law, the "good faith" standard has been adequately defined and is a test that is neither vague nor ambiguous as applied to licensed physicians.
The appellee counters that a penal statute must be strictly construed and may not be extended by construction. In support of this contention, he cites Locklear v. State, 50 Ala.App. 679, 282 So.2d 116, and Bolin v. State, 266 Ala. 256, 96 So.2d 582, holding unconstitutional a statute making possession of the commonly-found ingredients of a "stink or tear gas bomb" prima facie evidence of intent to manufacture such a bomb.
Bolin, supra, stated that the mere prohibition of such possession did not put the accused on notice of the "standard of conduct. . . intended to be required," and that prohibition of such commonly-used ingredients was "an unwarranted abuse of the police power of the state."
*323 Locklear, supra, also cited by appellee, states that "[c]riminal statutes cannot be extended to cases not included within the clear and obvious import of their language," and that "[n]o person is to be made subject to penal statutes by implication." In this case, our court found error by the trial court in refusing to exclude the State's evidence, where the evidence at trial showed that the appellant wore a patch on his clothing which contained vulgar or obscene words, rather than posted an "obscene or vulgar picture, placard, writing, or printed matter," as required by the statute under which the indictment was drawn.
I distinguish the cases cited by the appellee in that the statute complained of neither establishes a rule of evidence, as in Bolin v. State, supra, or makes criminal acts not within the clear and obvious import of the statute, as in Locklear, supra. Specifically, we find that the clear and obvious import of this section establishes a "good faith" standard for a licensed physician in prescribing substances designated as controlled under the Alabama Uniform Controlled Substances Act.

II
If the terms of a statute will permit, it will be so construed as to render it constitutional. Oliver v. State, 232 Ala. 5, 166 So. 615; State v. Ballard, Ala.Cr.App., 341 So.2d 957. It is the court's duty to construe the meaning of an act in such a manner as to give it a constitutional field of operation. Coughlin v. State, 56 Ala.App. 225, 320 So.2d 739. Courts are particularly cautious in holding an act unconstitutional, unless convinced beyond a reasonable doubt and after indulging every presumption in favor of its constitutional validity. Long v. State, 39 Ala.App. 372, 105 So.2d 136, reversed on other grounds, 268 Ala. 1, 105 So.2d 144.
Only when a statute's invalidity is "distinctly pointed out" is it declared unconstitutional. "Otherwise, courts are compelled to uphold the validity of a statute, if at all possible." Young v. State, 283 Ala. 676, 220 So.2d 843.
The appellee insists that the foregoing underlined portion of § 20-2-74, Code of Alabama 1975, does not sufficiently "put [licensed physicians] on proper notice" as to their "duties . . . in issuing prescriptions for controlled substances."
The appellee suggests that:
"Said statute was intended by the legislature to protect physicians from prosecution who administer treatment to narcotic addicts by furnishing or prescribing controlled substances that are necessary in such treatment but which are not furnished nor prescribed for the purpose of helping continued narcotic addiction."
He insists that the statute aids the physician who participates "in various drug abuse programs" to know the limitations placed upon his dispensing of controlled substances by the law.
On the other hand, the appellant, State of Alabama, maintains that a close reading of the statute allows another equally valid interpretation:
"Reduced to its simpliest terms the statute prohibits any practitioner of medicine from prescribing controlled substances unless the prescription is written in `good faith'."
Further, the State also argues that the phrase "in good faith" has been uniformly construed in statutes similar to the one in question to establish an unambiguous criteria consisting of the following elements:
"Whether or not a physical examination was given to the patient before the prescription was written. (2) Whether or not a physician-patient relationship had been established before the prescription was written, and (3) whether in the opinion of medical experts the prescription was written for legitimate purposes."
The applicable rule of statutory construction is that, where a statute is susceptible to two constructions, it is incumbent upon the court to adopt the constitutional interpretation. Johnson v. State, 245 Ala. 499, 17 So.2d 662.
Further, in Mooring v. State, 207 Ala. 34, 91 So. 869, it was stated that it is also the *324 court's duty, in determining whether an act is constitutional:
[T]o consider all related parts and provisions thereof that may contribute to disclose the legislative intent, and in so doing to give operation and effect to every provision, if fairly possible. It is never supposed that the Legislature intended in one act to introduce contradictory provisions; and it is never so declared unless that conclusion is required by the terms employed. It is the office of construction to reconcile inharmony of legislative terms, if that may be done without any assumption opposed to the language used."
The Alabama Uniform Controlled Substances Act is a penal statute. Article 4 of the Act, under which § 20-2-70 is found, is entitled "Offenses and Penalties," and delineates the penalties for possession or distribution of the controlled substances listed in its schedules. Also, the sections immediately preceding and following the section in question provide both felony and misdemeanor penalties for their enumerated offenses. See §§ 20-2-73 (providing for a sentence of from 4 to 30 years imprisonment for the sale of certain controlled substances to minors) and 20-2-75 (providing both misdemeanor and felony penalties for the possession of paraphernalia, or presence where controlled substances are unlawfully used.) The section in question plainly provides:
"Any person who violates this section shall be guilty of a felony and shall on conviction thereof, be subject to imprisonment for not less than 2 nor more than 15 years." § 20-2-74, Code of Alabama 1975.
In my judgment, the challenged section of the act was not designed to protect those doctors who distribute controlled substances from prosecution in any and all instances, but was intended to limit their dispensing authority to that done "in good faith." United States v. Moore, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333.
In United States v. Moore, supra, the Supreme Court of the United States considered the case of a physician accused of violating T. 21 U.S.C, § 841(a)(1), which makes it unlawful for "any person" knowingly to distribute or dispense a controlled substance, "except as authorized" by the act. The Supreme Court held that a registered physician could be prosecuted under that section when his activities fell outside the "usual course of professional practice." In Moore, the court approved the good faith standard as follows:
"The trial judge assumed that a physician's activities are authorized only if they are within the usual course of professional practice. He instructed the jury that it had to find
"`beyond a reasonable doubt that a physician, who knowingly or intentionally, did dispense or distribute [methadone] by prescription, did so other than in good faith for detoxification in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States.'" [emphasis added.]
See also Needelman v. United States, 261 F.2d 802.
Whether the words of the statute are sufficiently clear to inform a licensed physician as to what conduct on his part will render him liable to the statute's penalties is the test by which the statute must stand or fall. State v. Weeks, Fla., 335 So.2d 274.
In Connally v. General Const. Co., 269 U.S. 385,46 S.Ct. 126, 70 L.Ed. 322, we find:
"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." [Emphasis added.]
*325 Although no case defining or treating "good faith," as the term is used in the challenged section, has been previously presented before our courts, other jurisdictions have reviewed this language in the face of similar arguments.
The Indiana Supreme Court has commented in Smith v. State, 214 Ind. 169, 13 N.E.2d 562, that:
"[G]ood faith means `good intentions and the honest exercise of his best judgment as to the need of [defendant doctor's] patient,'" and that:
"`Good faith' needs no definition other than that implied by the words themselves."
The Illinois Uniform Narcotic Drug Act of 1957 (Ill.Rev.Stat.1963, Ch. 38, Pars. 22.-1-22.49), requires "good faith." See 1962 Ford Thunderbird v. Div. of Narcotic Control, 49 Ill.App.2d 8, 198 N.E.2d 155, 10 A.L.R.3d 554.
In rejecting the contention that the term "good faith" sets no recognizable standard of conduct, the Illinois Supreme Court in People v. Guagliata, 362 Ill. 427, 200 N.E. 169, stated that:
"`[G]ood faith' means `honest, lawful intent,' and . . . [as used in the statute has] a definite and well-understood meaning . . . free from ambiguity. . . ."
The California Supreme Court, in People v. Nunn, 46 Cal.2d 460, 296 P.2d 813 said:
"The phrase `good faith' in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. (See 18 Words and Phrases, Good Faith, p. 475 et seq.; 35 C.J.S. (1943), Faith, p. 488; 1 Bouvier's Law Dict. (Rawle's Third rev. 1914), p. 1359.)"
That court also determined that the term was inoffensive to the constitutional due process.
In State v. Weeks, supra, the Florida Supreme Court said:
"[W]e approve the definition of `good faith', in the context of this statute, to mean that the practitioner `has got to act in an honest endeavor to carry on his profession' of healing patients."
The Oxford English Dictionary, Vol. 5, p. 32, defines "good faith" as: "honest of intention in entering into engagements." The Uniform Commercial Code defines "good faith" generally as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." § 7-2-103(1)(b), Code of Alabama, 1975.
See also provisions of the Harrison Narcotic Act, 26 U.S.C.A., § 2550 et seq. exempting physicians from its operation only when they dispense drugs in "good faith" in their regular practice. Richards v. United States, 193 F.2d 554 (10th Cir. 1951).
To construe the statute in question as the appellee would have us would be to acknowledge that the statute has no gauge of criminality for physicians because, as the appellee suggests, the standards of conduct for physicians are not set forth in any cognizable form in the statute itself. Such a construction would render the statute unconstitutional as applied to physicians.
I recognize that a penal statute must be strictly construed. However, I do not believe that the strict construction standard is a command to override common sense. In this case, I believe the principle set forth in United States v. Brown, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442, should be followed:
"The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the `narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."
In my judgment, the words employed by the statute, "given their fair meaning" were sufficiently clear to enable those persons coming within its purview to understand the conduct sought to be proscribed.
*326 I do not believe that the proviso allowing practitioners of medicine to prescribe drugs to drug addicts involved in drug abuse programs can be fairly read to support the view that all activities of practitioners of medicine are beyond the reach of this statute.
In my judgment, the legislative intent was to limit the physician's dispensing authority to a course of action performed in "good faith." The statute was not intended to impede the physician who is involved in prescribing drugs for known drug addicts while participating in the various drug abuse programs, but it did not intend to exempt him from penalties when his act goes beyond the limits of those done in "good faith."
Under these facts, it is my judgment that the statute was designed to proscribe certain behavior of a licensed physician in prescribing substances designated as controlled under the Alabama Uniform Controlled Substances Act.
Therefore, I would find that the trial court was in error in sustaining the appellee's demurrer, and the judgment and order of the trial court should be reversed.
HARRIS, P. J., joins in this dissent.