TYSON, Judge.
Dr. H. Ray Evers was indicted on two counts of “selling, furnishing or giving away” amphetamines in violation of § 20-2-70(a), Code of Alabama 1975. The jury found him guilty on both counts and the trial court set sentence at five years’ imprisonment.
It is undisputed that on January 23,1981, the appellant furnished Johnny Coley prescriptions for two different amphetamines (both categorized as Schedule II drugs) to help Coley combat fatigue while driving his automobile on an alleged round trip between Dothan, Alabama, and Tampa, Florida.
Coley had been hired by the appellant to manage the pharmacy and central supply at appellant’s own Sealy Springs Health Services Clinic. Coley was a pharmacist but had lost his license to practice in Florida and had not yet obtained an Alabama license. He had worked at the clinic for about six weeks before the January 23, 1981, incidents.
Coley’s assistance had been requested by Sergeant Charles Odom of the Houston County Sheriff’s Department and Agent Bill Regness of the Alabama Bureau of Investigations in their investigation of the appellant, Dr. Evers. At their request, Coley consented to wear a “body-mike” while he solicited drugs from the appellant.
On the morning of January 23, 1981, at Coley’s request, the appellant gave him a prescription for twenty Biphetamine 20 capsules. Eskatrol, Ridlin and Dexamyl were discussed as alternatives but Coley opted for Biphetamine 20 (R. 81-82 and 133-134). Late that afternoon Coley reported to the appellant that one of the Biphetamine 20 *807 capsules had made his mouth too dry, so the appellant furnished him another prescription for fifteen Eskatrol capsules.
Both conversations between the appellant, Evers, and Coley, which prompted the appellant to furnish Coley the two amphetamine prescriptions, were transmitted via the “body-mike” and were received and recorded by Odom and Regness who were positioned in the vicinity of the clinic. The tape recordings of these conversations as well as the testimonies of Coley and Odom were presented to the jury as proof of the allegedly illegal transactions involving this appellant.
The prosecution also presented, as its medical expert, Dr. Sam C. West, Jr. Dr. West testified that prescribing amphetamines “for the purpose of keeping someone awake to take a trip” would not be “in the course of medical practice or legitimate medical practice.” (R. 221). He further stated that to insure against undesirable “reactions”, the minimum prerequisites for prescribing amphetamines would be a review of the patient’s medical history and an examination to check his pulse and blood pressure. (R. 222). Dr. West also described some of the hazards of taking amphetamines for prolonged periods while driving, e.g. impaired judgment, confusion, delirium, paranoid delusions, and visual hallucinations, among others. (R. 226). Finally, after an extensive voir dire examination with reference the predicate for admitting an excerpt from Tie Physician’s Desk Reference, and after an unrecorded bench conference, Dr. West was allowed to read warnings from that text that amphetamines should be used only in weight reduction programs and that they might “impair the ability of the patient to engage in potentially hazardous activities such as operating machinery or vehicles.” (R. 233-234).
The appellant did not deny that he furnished the prescriptions to Coley for the sole purpose of combating fatigue during Coley’s alleged trip. It was and is appellant’s contention, however, that his actions did not violate § 20-2-70(a) as charged, nor any other Alabama statute.
Appellant’s secretary, Doris Molliston, testified that Mr. Coley saw the appellant as a patient on January 19, 1981. (R. 289). She stated that she thought Coley was seeking treatment for a “cold” and that she, consequently, completed an “out-patient” identification form (which she identified at trial) and began an “out-patient” file for him. She further reported that Coley’s visit on the afternoon of January 23,1981, was again for the appellant’s professional services. She stated that she pulled his file on that occasion, gave it to the appellant and returned it to the file at the conclusion of Coley’s visit, after the appellant had made some notations with reference the visit She stated that this record remained in her files “until it was pulled out for the purposes of this case.” (R. 296).
Opieree Barbaree, appellant’s nurse, testified that on January 19, 1981, she briefly participated in the appellant’s examination of Coley and witnessed the appellant examine Coley’s bare chest with a stethoscope and inspect his throat with the aid of a tongue depressor. She stated that the appellant let her go, after only a few minutes, because Mr. Coley only had a cold.
On cross-examination, Molliston stated that she had worked for the appellant in Montgomery, Alabama, and in the Bahamas prior to the move to Houston County, and Barbaree testified that she had worked for the appellant since 1959.
The appellant’s medical expert was Dr. James Cooper, a friend of the appellant and one of his associates in Atlanta, Georgia, for several years. Dr. Cooper testified that it was “in the course of professional practice and for a legitimate medical purpose” for the appellant to furnish his employee, whom he had known and worked with for six weeks and who was himself a registered pharmacist, the two amphetamine prescriptions to combat fatigue while driving his automobile. (R. 334-335).
On cross-examination, however, Dr. Cooper admitted that he had never prescribed amphetamines to combat fatigue, that he would not prescribe them for truck drivers and that he had occasionally refused specif *808 ic requests for that very purpose. (R. 341-345). He stated that he would not furnish anyone, even a pharmacist, with “anything he wanted” (R. 345, 363) but might give someone amphetamines if that person insisted upon driving while fatigued. (R. 345).
Dr. Cooper also testified that he agreed with the warning in the Physician’s Desk Reference that amphetamines might impair one’s ability to operate an automobile but stated that he did not normally warn his patients accordingly and, in fact, he did not recognize the Physician’s Desk Reference as a primary medical authority. (R. 349-351).
He agreed that “the smallest quantity [of drugs] feasible should be prescribed at one time in order to minimize the possibility of over dosage” and reported that one Biphet-amine 20 capsule would “last” for about ten to twelve hours. (R. 347, 352).
Finally, in rebuttal to the appellant’s evidence that Johnny Coley was seen as a patient by the appellant on January 19, 1981, and January 23, 1981, [which Coley had previously denied at trial (R. Ill) ] the prosecution elicited testimony from Sergeant Odom that on January 25, 1981, he conducted a thorough search of the patient records at the Sealy Springs Health Services Clinic and did not find a patient record for Johnny Coley. After the search was completed the appellant, who had already been advised of his Miranda rights, told the authorities that those were all of his medical records. (R. 372).
I
The appellant was charged with and convicted of the violation of § 20-2-70(a), Code of Alabama 1975. The focus of this appeal is on the question of whether or not the appellant, a licensed physician, was lawfully prosecuted under this statute. In this regard, appellant challenges the applicability of the statute to a licensed physician, the use of § 13A-2-22, Code of Alabama 1975, in conjunction with it, the constitutionality of the statute, and the standard to be employed in determining whether or not a violation has in fact occurred.
A
Appellant contends that § 20-2-70(a) does not apply to licensed physicians. In support of this contention he presents a detailed analysis of the law in several other jurisdictions. We appreciate these attempted analogies with other jurisdictions with allegedly similar statutes, but we find them unpersuasive.
We need not look any further than our own Alabama statutes and cases to reach the conclusion that § 20-2-70(a) indeed applies to licensed physicians. In fact, § 20-2-70(a) proscribes certain illegitimate conduct irrespective of the apparent status of the perpetrator. [See State v. Bradford, 368 So.2d 317, 320 (Ala.Cr.App.1979) ].
In pertinent part § 20-2-70(a) states:
“(a) Except as authorized by this chapter, any person who ... sells, furnishes, gives away, ... controlled substances enumerated in schedules I, II, III, IV and V is guilty of a felony .... ” (Emphasis added).
Appellant argues that a licensed physician is not “any person” as specified in this section but is rather one “who is subject to article 3 of this chapter” as identified in § 20-2-71(a)(1), Code of Alabama 1975. Section 20-2-71(a)(1) lists “Prohibited acts B” as follows:
“(a) It is unlawful for any person:
(1) Who is subject to article 3 of this chapter to distribute or dispense a controlled substance in violation of section 20-2-58.” (Emphasis added).
We agree that a licensed physician is one “who is subject to article 3 of this chapter” as categorized in § 20-2-71(a)(l). However, the inclusion of a licensed physician in § 20-2-71(a)(l) does not necessarily exclude him from § 20-2-70(a).
Section 20-2-71(a)(l) prohibits a licensed physician (and all other registrants under the Alabama Uniform Controlled Substances Act) from “distributing” or “dispensing” controlled substances in violation of § 20-2-58, Code of Alabama 1975. The *809 pertinent part of § 20-2-58 merely prohibits the non-direct “dispensing” of Schedule II substances without a written prescription. There is no language in § 20-2-71(a)(1) to prevent a licensed physician from writing prescriptions for such illegitimate purposes as the unauthorized selling, furnishing or giving away of controlled substances. This does not mean that such conduct is permitted. To the contrary, we are of the opinion that § 20-2-70(a) prohibits just such behavior.
Section 20-2-70(a) prohibits any person from selling, furnishing or giving away controlled substances except as authorized by the Alabama Uniform Controlled Substances Act. “Person” is defined in § 20-2-2(19), Code of Alabama 1975, as any “[individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association or any other legal entity.” A licensed physician is obviously an “individual” and, therefore, is potentially subject to § 20—2-70(a). However, his conduct of selling, furnishing, or giving away controlled substances fits an exception to § 20-2-70(a) and is not illegal if said conduct is authorized by the Alabama Uniform Control Substances Act (i.e. if he falls within the “except as authorized by this chapter” language).
Therefore, the issue must focus on whether or not the licensed physician’s conduct in a particular instance was “authorized”.
In this instance the appellant is accused of writing prescriptions for controlled substances either outside the course of his professional practice, or for non-medical purposes or both. Looking to the specific provisions of the Alabama Uniform Controlled Substances Act, we can find no authority for such conduct.
Section 20-2-51(b) in pertinent part does provide that:
“(b) Persons registered by the certifying boards under this chapter to manufacture, distribute, dispense or conduct research with controlled substances may possess, manufacture, distribute, dispense or conduct research with those substances to the extent authorized by their registration and in conformity with the other provisions of this article.” (Emphasis added.)
Under this section a licensed physician is “authorized” to “distribute” or “dispense” any substance listed on his registration as long as he does so “in conformity” with other provisions of §§ 20-2-50 through 58 (i.e. “this article”.)
One section of “this article” which clearly describes “non-conforming” behavior (i.e. unauthorized conduct) is § 20-2-54(a)(5). In describing administrative action which could be taken by the certifying board, this section states that a licensed physician’s registration may be suspended or revoked if the registrant:
“(5) Has, in the opinion of his certifying board, excessively dispensed controlled substances for any of his patients. A registrant may be considered to have excessively dispensed controlled substances if his certifying board finds that either the controlled substances were dispensed for no legitimate medical purpose, or that the amount of controlled substances dispensed by the registrant is not reasonably related to the proper medical management of his patient’s illnesses or conditions.” (Emphasis supplied.)
As used here “dispensing” includes the act of “prescribing.” Section 20-2-2(8), Code of Alabama 1975. Since the broader grouping of “selling, furnishing, or giving away” [acts proscribed in § 20-2-70(a)] encompasses the act of “dispensing”, it, likewise, includes the act of “prescribing”.
Therefore, reading §§ 20-2-51(b), and -54(a)(5) into the “except as authorized by this chapter” language of § 20-2-70(a) leads us to the conclusion that the writing of a prescription for “no legitimate medical purpose” or for an amount “not reasonably related to the proper medical management of his patient’s illnesses or conditions” is not an “authorized” act and that such conduct takes a licensed physician outside of the “except as authorized” protection of the statute. Such illegitimate behavior sub *810 jects the licensed physician, as it would “any other person,” to the penalty provisions of § 20-2-70(a) notwithstanding the fact that he is otherwise authorized to distribute or “dispense” those substances listed in the prescription and has satisfied the requirements of § 20-2-71(a)(l).
Based on the accusations against him, this appellant was, therefore, properly charged and convicted under § 20-2-70(a). It is of no consequence that his license could also be revoked pursuant to § 20-2-54(a)(5) because as explained in § 20-2-78, Code of Alabama 1975, penalties imposed are in addition to and not in lieu of any civil or administrative penalties or sanctions otherwise authorized.
[For a similar analysis with reference the application of § 20-2-70(a) to registered pharmacists see Chesteen v. State, 365 So.2d 102, 107 (Ala.Cr.App.), cert, denied, 365 So.2d 108 (Ala.1978)].
B
In instructing the jury with reference appellant’s method of perpetrating the allegedly illegal conduct, the trial court explained that, pursuant to § 13A-2-22, Code of Alabama 1975, the appellant could be found guilty for causing an innocent person (i.e. the pharmacist) to perform the unauthorized “selling, furnishing or giving away” of the controlled substances. Appellant argues that charging the jury that § 13A-2-22 could be used in conjunction with § 20-2-70(a) to establish his guilt was reversible error. We disagree.
Having reviewed the record, we find nothing in this charge that could be considered harmful to this appellant. As noted above we have determined that a licensed physician’s act of “prescribing” controlled substances in an unauthorized manner is included in the “selling, furnishing, or giving away” language of § 20-2-70(a). Thus, an instruction with reference § 13A-2-22 may have been unnecessary. However, we find no merit in the argument that such an instruction in the alternative was prejudicial to this appellant. Rule 45, Alabama Rules of Appellate Procedure.
C
The appellant further contends that even if § 20-2-70(a) is applicable, it is unconstitutional when applied to licensed physicians in that its language is too vague, ambiguous, and indefinite and does not identify a standard by which said licensed physician might determine whether or not his conduct would be proscribed by the statute. Appellant complains that the standards “devised” by the trial court, “within the course of professional practice” and “for a legitimate medical purpose,” have no statutory basis.
Appellant also asserts that the indictments, which were based on § 20-2-70(a) are unconstitutional for the same reasons and because they do not adequately insure against double jeopardy.
We disagree with appellant’s vagueness challenges to the statute and the indictments. As pointed out above, the statute clearly proscribes only the “unauthorized” selling, furnishing, or giving away of controlled substances. We find nothing constitutionally infirm in requiring a licensed physician to examine the Alabama Uniform Controlled Substances Act in its entirety to determine what conduct is or is not authorized.
Furthermore, the standards espoused by the state and the trial court, though not word for word recitals of the statutory standards, are definitely covered in § 20-2-54(a)(5). We find no merit in an argument that a licensed physician would not be on notice of these standards, since the same standards could be applied against him in a registration revocation proceeding.
We find no evidence of record to support appellant’s insufficient indictment challenges. Appellant was aware of the two transactions with which he was charged and the indictments and convictions based thereon are sufficient to protect him against double jeopardy. Summers v. State, 348 So.2d 1126 (Ala.Cr.App.), cert. denied, 348 So.2d 1136 (Ala.), cert. denied, *811 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1977).
D
Appellant’s contention that the trial court erred in instructing the jury with reference the “for a legitimate medical purpose” standard must also fail. As pointed out above, this standard is clearly specified in § 20-2-54(a)(5) and incorporated by implication into the “except as authorized by this chapter” language of § 20-2-70(a). Even if this were not the case, we fail to see the prejudice to this appellant.
Appellant agrees with the use of the “in the course of professional practice” standard also explained to the jury. Any prescribing of controlled substances done “in the course of professional practice” would certainly be “for a legitimate medical purpose.” The former would be the more difficult standard for appellant to meet, such that the inclusion of “for a legitimate medical purpose” would not add to his burden.
Moreover, after objection to the use of this standard in the trial court’s oral charge, appellant, himself, requested and was granted five written jury charges which included the “for a legitimate medical purpose” language. [See charges 1A, 17A, 19A, 20A and 24A at (R. 462-464)].
II
Appellant cites as reversible error the trial court’s denial of his motion to suppress the tape recordings of the two conversations between Coley and the appellant, which prompted the appellant to write the allegedly illegal prescriptions. The appellant contends that these recordings should have been declared inadmissible in violation of both the Alabama and the United States constitutional provisions against warrant-less searches. He cites cases in four other jurisdictions as authority for reversing this trial court’s decision. [See State v. Glass, 583 P.2d 872 (Alaska 1978); People v. Hall, 88 Mich.App. 324, 276 N.W.2d 897 (1979); State v. Brackman, 178 Mont. 105, 582 P.2d 1216 (1978); White v. Davis, 13 Cal.3d 757, 120 Cal.Rptr. 94, 105, 533 P.2d 222, 233 (1975)].
We understand that this issue has been decided in appellant’s favor in other jurisdictions. However, the prevailing view in Alabama, which is in accord with the most recent United States Supreme Court decisions, is that a search warrant is not required where, as here, the person wearing the “body-mike” consents to the taping of his conversations. Hammond v. State, 354 So.2d 280 (Ala.Cr.App.), cert. denied, 354 So.2d 294 (Ala.1977), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978), and cases therein cited [especially, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971)].
An accused must assume the risk that his confidant, in this case a “bugged” informant, might be reporting to the police, Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. White, supra. This is no less true where, as here, the conversation is not initiated by the accused, is not prearranged, and takes place in the accused’s regular place of business.
We see no constitutional reason to distinguish, for admissibility purposes, between the “bugged” informant’s testimony which reveals the details of a certain conversation and an accurate recording of that same conversation made with the informant’s consent.
Furthermore, as a practical matter, we fail to see the harm to this appellant in admitting these recordings. Appellant does not challenge the admissibility of Coley’s testimony. He does not contend that Coley erred as to any of the pertinent details of the two recorded conversations. Appellant’s secretary and his nurse each testified that the appellant had examined Coley as a patient before the prescriptions were written, and his medical expert stated that prescribing amphetamines for combating fatigue might be legitimate under certain circumstances. These testimonies, though there was evidence to dispute all three, were offered to prove that appellant’s conduct, as evidenced by Coley’s testimony and the recordings, was “in the course of his *812 professional practice” and for a “legitimate medical purpose.” Thus a jury question was presented.
Ill
The appellant further challenges three discretionary rulings of the trial court in admitting or refusing to admit certain evidence.
A
He argues that the trial court’s admission of the excerpt from the Physician’s Desk Reference with reference the warnings against the use of amphetamines violated his right to confront witnesses.
To the contrary, excerpts from scientific works and treatises are admissible if said texts are properly authenticated. Franklin v. State, 29 Ala.App. 306, 197 So. 55, cert. denied, 240 Ala. 57, 197 So. 58 (1940); Day v. State, 378 So.2d 1156 (Ala.Cr.App.), rev’d on other grounds, 378 So.2d 1159 (Ala.1979). In this instance the predicate was established by the state’s medical expert who stated that the Physician’s Desk Reference was a recognized authority for use in prescribing medicine (R. 227).
Appellant’s medical expert testified that he would not necessarily use this text as a primary authority but he did agree with the warnings read therefrom. He stated that he did not customarily give said warnings to all patients receiving amphetamines.
There was no error in admitting this evidence from the Physician’s Desk Reference.
B
Appellant also asserts that the trial court committed reversible error in sustaining objections to several of appellant’s questions to Ms. Barbaree with reference the appellant’s basic examination procedure.
Ms. Barbaree was allowed to relate what she observed on January 19, 1981, in appellant’s examination room. She stated that she saw the appellant examine Coley’s chest with a stethoscope and saw him use a tongue depressor to examine Coley’s throat. The trial court by sustaining the state’s objections would not, however, permit her to state “what the appellant’s basic examination consisted of.”
For aught that appears, the trial court sustained the state’s objection because “what the appellant’s basic examination consisted of” was not relevant to the issue of whether or not the appellant had conducted a sufficient examination of Coley to meet the requirements of prescribing amphetamines “in the course of his professional practice” and for a “legitimate medical purpose.” Such a relevancy determination was within the trial court’s sound discretion and we see no abuse thereof. Hill v. State, 366 So.2d 296 (Ala.Cr.App.), aff’d, 366 So.2d 318 (Ala.1978); McLeod v. State, 383 So.2d 207 (Ala.Cr.App.1980).
C
Responding to several questions of the appellant on direct examination, Ms. Molliston testified that on January 19,1981, Coley saw the appellant as a patient because he had a cold. She reported that on that date she prepared an out-patient form and a file for Coley. She was then asked questions with reference her conversation with the appellant concerning Coley’s visit but this testimony was pre-empted by the trial court’s sustention of the state’s objection (R. 291). The appellant cites this action by the trial court as reversible error.
Appellant stated to the trial court that the sole purpose of this inquiry of Ms. Molli-ston was to impeach Coley, who had previously denied that he had seen the appellant as a patient on January 19,1981. From our reading of the record, it appears that such impeachment was completed before the trial court’s alleged error. Since appellant cites no evidence to the contrary, any error in this regard was harmless. Rule 45, Alabama Rules of Appellate Procedure.
Furthermore, although the trial court did not clarify its reasons, it appears that the state’s objection might have been properly sustained on either hearsay or relevancy grounds.
*813 IV
Appellant additionally challenges, as improper, remarks made by the prosecution in its opening statement (R. 75-76) and in closing argument (R. 384). These challenges were not preserved for our review because there was no adverse ruling from the trial court in either instance. Mitchell v. State, 338 So.2d 524 (Ala.Cr.App.1976); Chambliss v. State, 373 So.2d 1185 (Ala.Cr. App.), cert. denied, 373 So.2d 1211 (Ala.1979), and cases therein cited; Yates v. State, 390 So.2d 32 (Ala.Cr.App.1980).
V
Appellant’s final contention that the trial court erred in refusing appellant’s requested written charge number 31 was, likewise, not preserved for our review. The appellant failed to make a proper objection to said refusal before the jury retired. Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), and authorities therein cited.
In summary, the underlying theme of this appeal, as presented by appellant in brief and in oral argument, is that he did nothing illegal in prescribing amphetamines to an employee for the sole purpose of combating fatigue while driving. Cognizant of this assertion, we have thoroughly examined each reviewable issue that appellant has presented and have studied this record carefully. We have determined that this appellant was properly charged, that any errors committed during the course of the trial were properly dealt with, and that the jury was correctly instructed with reference to the standards to apply in determining whether or not appellant’s conduct was illegal. Although the appellant proffered evidence to the contrary, including testimony from a medical expert, the record contains sufficient evidence for the jury to conclude that the appellant violated § 20-2-70(a), Code of Alabama 1975, because his acts of prescribing amphetamines in this instance were neither “in the course of his professional practice” nor “for a legitimate medical purpose.”
Therefore, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.